**Yolanda BASS, Respondent,**

v.

**EQUITY RESIDENTIAL HOLDINGS, LLC, Appellant.**

**No. A13–2177.**

Court of Appeals of Minnesota.

June 30, 2014.

Robert L. Schnell, Matthew B. Kilby, Faegre Baker Daniels LLP, Minneapolis, MN, for respondent.

Kenneth Hertz, Columbia Heights, MN, for appellant.

Considered and decided by LARKIN, Presiding Judge; STAUBER, Judge; and KLAPHAKE, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

KLAPHAKE, Judge.*

Appellant challenges the district court's judgment directing it to pay monetary damages for violations of Minn.Stat. §§ 504B.231 and .271, subd. 2. We affirm.

## FACTS

Respondent Yolanda Bass was a tenant in a building owned by appellant-landlord Equity Residential Holdings, LLC (Equity), but she fell considerably behind in her rent. Equity began an eviction action against Bass; the matter was set for an evidentiary hearing, conditioned on Bass depositing $960 with the housing court. Bass did not deposit the money and the housing court issued an order for recovery of the premises in favor of Equity on April 5, 2013. The order indicated that a writ of recovery and order to vacate would be issued "upon [Equity's] request and payment of fee." Equity did not request the writ and did not pay the fees, and no writ was issued.

Bass left her apartment at 8:15 a.m. on April 10 to go to work; when she returned, the locks on the apartment were changed. Bass called Equity's agent, Stephen Frenz, who said he would call her back. When he did not call back, Bass went to the rental office, where Frenz informed her that he had thrown all of her possessions into dumpsters behind the building because she had abandoned the apartment.

Bass took pictures of her possessions in the dumpsters; she did not retrieve them because the dumpsters were filled with water from rain and melting snow, and she was not strong enough to remove the water-soaked and spoiled items. The following day, Bass filed a lockout petition

Minn. Const. art. VI, § 10.

pursuant to Minn.Stat. § 504B.375. The Hennepin County sheriff served Equity's agent with the order on the petition on April 16, 2013. The housing court heard the petition on April 17, 2013; Bass appeared but Equity did not. Equity's attorney called, saying he could not attend because he was at another court hearing, but the housing court referee found that no certificate of representation had been filed and that Equity had been properly served and knew about the hearing. After hearing Bass's testimony, the housing court referee determined that Equity had defaulted, Bass had been wrongfully locked out, Bass had not abandoned the premises, Equity acted in bad faith, and Bass suffered damages. The referee scheduled a hearing for May 10 for the sole purpose of determining damages.

On May 10, the parties appeared before the referee. Bass testified about her damages, and submitted a list of lost property with estimated values and photos of the property in the dumpsters. Equity was represented by its attorney, who offered Frenz's testimony. On August 7, 2013, the housing court referee issued an order awarding Bass treble damages of $9,386.97, as provided for under section 504B.231. The referee also awarded Bass $1,000 as punitive damages, as permitted by section 504B.271. The total of $10,386.97 was to be paid within 60 days following the order.

On August 16, 2013, Equity moved for district court review of the referee's order, but did not request a stay of the order. On September 13, 2013, the district court issued an order granting judicial review and ordering Equity to post a bond or deposit the payment with the court. At Equity's request, the housing court waived the security requirement because Equity reasserted that it was not seeking a stay of judgment. This order specifically informed Equity that Bass could docket the judgment against Equity because there was no stay. The district court held the review hearing on October 10, 2013. On October 16, 2013, the district court issued its findings and order upholding the referee's August 7 order, denying Equity's request for amended findings and order, and requiring Equity to pay Bass $10,386.97 plus interest, attorney fees, and costs. Judgment was entered on November 7, 2013. Equity appeals the judgment.[1]

## ISSUES

I. Did the housing court have jurisdiction to enter a monetary judgment and to award punitive damages for improper ouster and for a landlord's failure to return a tenant's property?

II. Did the housing court err in calculating compensatory and punitive damages?

## ANALYSIS

Minn. R. Gen. Pract. 611(a) states that the district court's "review of a decision recommended by the [housing court] referee shall be based upon the record established before the referee." Once a referee's findings and order are confirmed by

1. The district court decided that Equity could not seek review of the August 7 housing court order because it had not paid the ordered damages and was therefore in default, although the district court also addressed the merits of Equity's claims. *See* Minn. R. Gen. Pract. 611(a) (stating that "a party not in default may seek judge review of a decision ... recommended by the referee"). But Eq-

uity appeared and filed an answer in the proceeding. "Default," which is not defined in section 504B.375, is commonly understood to occur when a party fails to answer or appear. *See* Minn. R. Civ. P. 4.01, 55.01. We conclude that the district court erred by determining that Equity forfeited its right to review and, therefore, we will address the merits of Equity's claims.

the district court, they become the findings and order of the district court. Minn.Stat. § 484.70, subd. 7(c) (2012); *Griffis v. Luban,* 601 N.W.2d 712, 715 (Minn.App.1999); *see also* Minn. R. Civ. P. 52.01 ("The findings of a referee, to the extent adopted by the court, shall be considered as the findings of the court."). We review the district court's findings for clear error and in the light most favorable to the district court's decision, and defer to the district court's credibility determinations. *Rasmussen v. Two Harbors Fish Co.,* 832 N.W.2d 790, 797 (Minn.2013); Minn. R. Civ. P. 52.01. But we review the district court's statutory interpretation de novo, as a question of law. *Lee v. Lee,* 775 N.W.2d 631, 637 (Minn.2009).

## I.

■ Equity asserts that the housing court referee could not award damages because the housing court is a court of limited jurisdiction, established to provide "expedited relief because of the summary nature of the proceeding."

A district court is a court of general jurisdiction. Minn.Stat. § 484.01 (2012). The district court may establish a program to "consolidate the hearing and determination of matters related to residential rental housing" and such programs are affirmatively established by statute in Ramsey and Hennepin Counties. Minn.Stat. § 484.013, subd. 1 (2012). Under Minn. Stat. § 484.013, subd. 2 (2012), the Hennepin County housing court has jurisdiction over "all proceedings under chapter 504B; criminal and civil proceedings related to violations of any state, county or city health, safety, housing, building, fire prevention or housing maintenance code; escrow of rent proceedings; and actions for rent abatement." The housing court "must provide for the consolidation of landlord-tenant damage actions and ac-

tions for rent at the request of either party." *Id.,* subd. 2. This language is repeated in Minn. R. Gen. Pract. 602, which provides that a referee may preside over housing court matters. A party may object to assignment of a referee to hear contested matters. Minn.Stat. § 484.70, subd. 6 (2012). Equity did not object to having a referee preside over the hearing.

The housing court referee heard Bass's lockout petition on April 17 and, after finding that Equity had defaulted by not appearing, granted the lockout petition and set the matter of damages on for a separate hearing. Damages for unlawful ouster done in bad faith are permitted under Minn.Stat. § 504B.231(a), which states that a "tenant may recover from the landlord treble damages or $500, whichever is greater, and reasonable attorney's fees." Section 504B.231(b) provides that damages for ouster "are in addition to and shall not limit other rights or remedies available to ... tenants."

If a tenant abandons rented premises, a landlord must store the tenant's property for at least 28 days and must attempt to notify the tenant before disposing of the property. Minn.Stat. § 504B.271, subd. 1. Subdivision 2 provides that a landlord must return a tenant's property within 24 hours after a written demand; failure to do so is a basis for an award of punitive damages of "twice the actual damages or $1,000, whichever is greater." Subdivision 4 states that punitive damages under this section are in addition to any other remedies available to a tenant.

Both of these remedies are available under chapter 504B. Minn.Stat. § 484.013, subd. 2, specifically grants jurisdiction to the housing court of "all proceedings under chapter 504B" and permits the housing court to consolidate "landlord-tenant damage actions and actions for rent at the request of either party."

■ Equity argues that sections 504B.231 and 504B.271 vest a tenant with a right to recover damages but do not grant the housing court authority to grant monetary damages. But the housing court is a program within the district court; once the district court reviews and confirms the housing court referee's decision, the findings and order become the district court's findings and order. *See Griffis,* 601 N.W.2d at 715. The district court has "original jurisdiction" over "all civil actions" within its district. Minn.Stat. § 484.01, subd. 1. The claims raised here are within the district court's jurisdiction.

## II.

■ Equity challenges the amount of the damages award, arguing that Bass did not offer adequate proof of damages and failed to mitigate her damages; damages for ouster cannot include damage to personal property; Bass did not prove that Equity acted in bad faith; and an award of both treble damages and punitive damages was improper.

Bass offered photos of her belongings in the dumpsters and a list of values that she had compiled. She testified that she had not used retail prices but had researched values of similar used property at Goodwill and on Ebay. The district court found that Bass was credible. We will not set aside the district court's findings of fact unless they are clearly erroneous, and we defer to the district court's opportunity to judge witness credibility. Minn. R. Civ. P. 52.01. Findings are clearly erroneous only if there is no reasonable support in the record. *Rasmussen,* 832 N.W.2d at 797. There is record evidence to support the district court's factual findings of the value of Bass's property.

■ Equity argues that Bass failed to mitigate her damages. Generally, the party alleging a loss because of a tort or breach of contract has a duty to mitigate damages. *Lesmeister v. Dilly,* 330 N.W.2d 95, 103 (Minn.1983); *Cnty. of Blue Earth v. Wingen,* 684 N.W.2d 919, 924 (Minn. App.2004); *Deutz–Allis Credit Corp. v. Jensen,* 458 N.W.2d 163, 166 (Minn.App. 1990) (stating that an injured party must use "reasonable diligence and good efforts to minimize . . . losses").

The district court referred to, but did not decide whether Bass had an obligation to mitigate her damages under sections 504B.231 and 504B.271. But the court made the following finding: "Without making a finding as . . . to whether there is a duty to mitigate the Court finds that requiring [Bass] to mitigate by 'dumpster diving' to retrieve her rain soaked belongings is outrageous, and is beyond reasonable diligence to mitigate damages."

■ Neither section 504B.231 nor 504B.271 expressly requires a tenant to mitigate damages or excuses a tenant from mitigating damages. The general law on mitigation is that the wronged party must use "reasonable diligence and good efforts." *Deutz–Allis Credit Corp.,* 458 N.W.2d at 166. The district court found that Bass's personal property had been placed in dumpsters, was rain-soaked, and included such things as electronic equipment, mattresses, pillows, a couch, and wooden furniture that would be damaged by immersion in water. Under these circumstances, the district court's finding that "reasonable diligence" does not include salvaging ruined items from a dumpster is not clearly erroneous.

■ Equity argues that section 504B.231 permits damages for ouster, but not for personal property. This section does not limit the type of damages that can be claimed, but only states that a tenant may recover damages for unlawful, bad-faith ouster. The damages here

flowed as a direct consequence of the unlawful ouster: if Equity had not locked Bass out and moved her property to an open dumpster, no damage would have occurred.

■ Equity asserts that it did not act in bad faith and the district court failed to make adequate findings to support an award under Minn.Stat. § 504B.231. The district court found that Bass left the apartment for no more than six hours, negating Equity's claim that she had abandoned the premises; Bass had "substantial personal property remaining on the premises," which also negated abandonment; and Bass called the management company, travelled to the management company when her phone call was not returned, and called the Minneapolis Police Department, who engaged in a three-way call with Bass and Frenz. Even after all of Bass's actions, Equity continued to insist that she had abandoned the property, failed to apply for the writ of recovery that would have given them a legal basis for eviction, and refused to assist her in recovering her belongings.

Section 504B.271, subdivision 2, also requires a bad faith finding before an award of punitive damages. In deciding whether to award punitive damages under this section, the court must consider

> (1) the nature and value of the property; (2) the effect the deprivation of the property has had on the tenant; (3) if the landlord [or] an agent . . . unlawfully took possession of the tenant's property; and (4) if the landlord [or] an agent . . . acted in bad faith in failing to allow the tenant to retake possession of the property.

Minn.Stat. § 504B.271, subd. 2. The district court considered these four factors, and concluded that Equity acted in bad faith because the items discarded by Equity were everything that Bass and her children "needed to live in a home," including medical equipment; the effect of the deprivation on Bass was substantial, because of her limited income; and the taking of the property was unlawful. It is evident from the record that Equity did not attempt to comply with its clearly delineated statutory duties relating to storage and care of a tenant's property. The record provides adequate support for the finding of bad faith.

■ Finally, Equity argues that the district court erred by awarding both treble damages under section 504B.231 and punitive damages under section 504B.271. But damages under these two sections address different conduct: section 504B.231 addresses unlawful ouster and section 504B.271 addresses a landlord's failure to comply with statutory duties to preserve a tenant's personal property. In addition, both sections state that the remedies are in addition to any other remedies available to tenants. *See* Minn.Stat. §§ 504B.231(b), .271, subd. 4. The district court did not err by awarding both treble and punitive damages.

## DECISION

The housing court, as a division of the district court, had jurisdiction to award a monetary judgment as authorized under Minn.Stat. § 504B.375. The findings of fact regarding damages are not clearly erroneous and the damages awarded are consistent with the applicable statutes.

**Affirmed.**