*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1778**

Nuvola, LLC,
Respondent,

vs.

Morgan Wright,
Appellant.

**Filed June 13, 2016
Affirmed
Cleary, Chief Judge**

Hennepin County District Court
File No. 27-CV-HC-15-3802

John E. Braun, Thomas Law Group, PLLC, Minneapolis, Minnesota (for respondent)

Erik F. Hansen, Trevor Oliver, Burns & Hansen, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Cleary, Chief Judge; and Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

In this eviction action, appellant Morgan Wright challenges the district court's finding that the parties' purchase agreement was cancelled, its failure to consider whether

respondent Nuvola, LLC was responsible for the failure to close on the sale of the subject property, and the court's denial of appellant's request for a stay pending resolution of related civil litigation. Because we hold that the district court did not err in deciding that the purchase agreement was cancelled by its own terms, and that appellant's request for a stay was untimely and did not provide the district court with a case-specific reason to grant the stay, we affirm.

## FACTS

On December 9, 2014, respondent and appellant entered into a condominium purchase agreement under which appellant agreed to purchase a part of unit #200 from respondent. Respondent planned to combine the rest of unit #200 with unit #100, which was directly below unit #200. The parties were to evenly split the cost of physically dividing unit #200, but they agreed that each party would be solely responsible for covering the cost of connecting utilities and providing mechanical equipment to their respective units.

Respondent and appellant aimed for a March 1, 2015 closing. An addendum to the purchase agreement provided that, if the closing could not be accomplished by March 1, appellant would take immediate temporary possession of the property, begin contributing to respondent's running costs, and pay utilities and insurance for unit #200. The addendum further provided: "In the event [appellant] is unable or unwilling to complete purchase by July 31, 2015, this purchase agreement shall be deemed cancelled and all monies paid thereunder shall be forfeited to [respondent]."

2

Appellant and Francesco Parisi, the sole owner of Nuvola, LLC, were in a romantic relationship at the time they entered into the purchase agreement. By January 2015 their relationship had deteriorated and respondent began managing construction on unit #200 on its own. In the process, respondent incurred approximately $74,000 in construction expenses which it expected to charge to appellant, but appellant continues to dispute whether she was responsible for paying these costs.

Appellant took possession of unit #200 after March 1, 2015, per the purchase agreement. On March 24, 2015, respondent served appellant with a notice of declaratory cancellation of the purchase agreement, apparently pursuant to Minn. Stat. § 559.217, subd. 4 (2014). Respondent stated that the cancellation was based on appellant's failure to contribute to running costs starting on March 1, as agreed to in the addendum; appellant's failure to acquire insurance for the property starting on March 1; appellant's failure to install mechanical equipment and services that would make the unit habitable; and appellant's withdrawal of earnest money from a joint account where it was supposed to be available at any time prior to closing for disbursement to pay costs associated with dividing the property.

In response, appellant sought a district court order suspending the declaratory cancellation. That action is the basis of a separate civil suit between the parties. On April 8, 2015, the district court in the separate civil suit found that the defects or unfulfilled conditions did not, by the terms of the purchase agreement, cancel the agreement and, therefore, the notice of cancellation was subject to Minn. Stat. § 559.217, subd. 3 (2014),

not subdivision 4. Because subdivision 3 allows 15 days to cure, and appellant had cured or could cure all the defects that respondent had alleged, the district court granted appellant's motion for a temporary restraining order, and suspended respondent's declaratory cancellation, enjoining respondent from initiating further proceedings to terminate the purchase agreement. The district court also ordered appellant to make monthly payments to respondent for running costs, insurance, and utilities.

The sale of the property did not close by July 31, 2015. On August 4, 2015, respondent filed an eviction action to remove appellant, who remained in possession of unit #200. At trial in housing court on August 25, 2015, appellant argued that she had not been "unable or unwilling" to close by July 31. She argued that it was respondent's actions that led to her failure to close by the deadline. Appellant maintained that she did not close because respondent failed to pay condominium dues; demanded payment from appellant immediately before closing for construction costs respondent had incurred; did not provide appellant's lender with invoices for those construction costs; and, as late as the scheduled closing date on July 31, alleged that appellant was engaging in mortgage fraud. Appellant also asserted that the stress of the situation caused her to have multiple seizures on July 31, which rendered her unable to help resolve issues that arose with the closing.

Respondent argued that appellant's failure to close on the purchase of unit #200 was a result of her failure to close on the sale of her other residence on July 31, 2015. A mortgage company representative testified that the closing on appellant's other condominium was delayed due to a legal issue that her homeowner's association raised late

4

in the process. The mortgage company's underwriters then had to review the loan before they could approve it, which, according to the representative, could take anywhere from a day to several weeks. The underwriters could not get the necessary documents to approve the buyer's loan by July 31, so appellant did not close on the sale of her other condominium by that date. Respondent also elicited testimony from the mortgage closer that appellant had to sell her other home before she could close on the purchase of unit #200. The closer testified that because appellant did not provide proof that she had closed on the other sale by July 31, the closing on unit #200 could not be completed.

Appellant's mortgage loan officer testified that respondent's allegation of mortgage fraud and its demand for payment of $74,000 on the morning of July 31—the scheduled closing date for unit #200—were not resolved by the closing time. The loan officer testified that she would not have closed without resolving these issues. She also testified, however, that while she initially thought that respondent would not close without its demands being met, she later understood that respondent had agreed to close about an hour before the scheduled closing. The loan officer further testified that the only condition of closing was the sale of appellant's residence, and because that did not happen, appellant could not close on unit #200.

At the end of trial, the housing court invited appellant to submit a letter brief about respondent's citation to an unpublished court of appeals decision. Appellant included in the letter brief a request for a stay of the eviction proceeding pending the resolution of her related civil suit involving respondent's earlier attempt to cancel the purchase agreement.

She argued that the civil suit was still pending and involved the validity of the purchase agreement at issue in the eviction proceeding. Appellant had not previously requested a stay of the eviction proceeding in housing court. The housing court considered the request and declined to grant it because the request was untimely. The housing court found that, even if appellant's motion was timely, appellant had failed to provide a case-specific reason why a stay was necessary to protect her interests.

The housing court found that respondent had proved by a preponderance of the evidence that appellant was unable or unwilling to complete the purchase by July 31, 2015, and that this caused the purchase agreement to expire by its own terms on that date. The housing court recommended that a writ of recovery of the premises and order to vacate be issued in favor of respondent, and the district court confirmed this decision. Appellant sought review of the housing court decision. The district court reviewed and affirmed the housing court's decision in its entirety after a hearing. This appeal followed.

## D E C I S I O N

### I.

Appellant argues that her request to stay was timely because the end of a housing court proceeding does not mark the end of the eviction proceeding as a whole. Respondent argues that appellant's informal request to stay does not qualify as a timely motion because appellant submitted it after completion of the eviction proceeding. The eviction proceeding took place on August 25, 2015, and appellant requested a stay on August 28, 2015. The housing court made recommendations on September 4, 2015, and the district court

6

confirmed the housing court's findings and order on the same day. Appellant argues that because the housing court's findings and conclusions are "mere recommendations" that only become the findings and order of the district court after the district court confirms them, a motion is timely if it is made any time after housing court proceedings but before the district court's review and confirmation.

This court reviews the housing court decision, as it is effectively the district court's decision. "The findings of a referee, to the extent adopted by the court, shall be considered as the findings of the court." Minn. R. Civ. P. 52.01. "[O]nce the district court reviews and confirms the housing court referee's decision, the findings and order become the district court's findings and order." *Bass v. Equity Residential Holdings, LLC*, 849 N.W.2d 87, 92 (Minn. App. 2014).

"We review the interpretation of procedural rules de novo." *State v. Martinez-Mendoza*, 804 N.W.2d 1, 6 (Minn. 2011). In Hennepin County Housing Court, "[a]ny motion otherwise allowed by Minnesota Rules of Civil Procedure may be made by any party orally or in writing at any time including the day of trial." Minn. Gen. R. Pract. 610. The housing court interpreted this rule to mean that appellant could have requested a stay before the trial began on August 25, 2015, but her letter brief of August 28 was too late because it arrived after the trial on the merits. Appellant appears to interpret the language more broadly to mean that a party can move the court at any time—even after trial.

The housing court has the better interpretation. The language and context of the rule informs us that a party is permitted to make a motion at any time leading up to, and

7

including, the day of trial, but not after completion of trial. The phrase "at any time" does not lend itself to mean that parties may make motions up until the last moment before the referee makes her recommendation, given the context of housing court rules. Rule 610 provides that the court may grant a party time to respond to any motion. If, however, parties were allowed to move the court at the last moment, it would not leave any time for response, given that eviction actions are also intended to be summary proceedings. Minn. Stat. § 504B.001, subd. 4 (2014).

Appellant also argues that any motion made during the period leading up to a district court's review of a referee's confirmed decision is timely. This argument is inconsistent with Rule 611(a), which provides that "[a] judge's review of a decision recommended by the referee shall be based upon the record established before the referee." Minn. Gen. R. Pract. Rule 611(a). If a party were permitted to submit motions to the reviewing court after a district court had confirmed the housing court's recommendations, the reviewing court would find itself considering items that were not in the record before the housing court. Appellant's request for a stay was not timely.

## II.

The district court also found that appellant had failed to present a case-specific reason to grant a stay. The court found no risk that its decision in the eviction action would cause problems of issue or claim preclusion in the civil action involving the same purchase agreement. Appellant argues on appeal that it was reversible error to decline to stay or abrogate the eviction proceeding.

8

A district court has discretion to decide whether to grant a stay in an eviction proceeding, and we review its decision only for abuse of that discretion. *Deutsche Bank Nat. Trust Co. v. Hanson*, 841 N.W.2d 161, 164 (Minn. App. 2014). We review the decision based on the record that was before the housing court. Minn. R. Civ. App. P. 110.01 ("The documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."); Minn. Gen. R. Pract. 611(a) ("A judge's review of a decision recommended by the referee shall be based upon the record established before the referee.").

A defendant may request a stay if there is another pending action related to the same property, but that fact alone does not require a stay. *Fed. Home Loan Mortg. v. Nedashkovskiy*, 801 N.W.2d 190, 192-93 (Minn. App. 2011). The party requesting the stay must provide a case-specific reason for granting it and, even then, the decision remains discretionary with the district court. *Id.* at 193. This court has held that when a parallel civil action is pending which involves counterclaims and defenses that are "necessary to a fair determination of the eviction action, it is an abuse of discretion not to grant a stay of the eviction proceedings." *Bjorklund v. Bjorklund Trucking, Inc.*, 753 N.W.2d 312, 318-19 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008).

In her letter brief, appellant argued that the validity of the purchase agreement is at issue in the eviction action and in the related civil action and that, as a result, the civil action determines the eviction action. Appellant stated that both of the proceedings are "dependent on the effectiveness and validity of the purchase agreement." Appellant did

9

not explain how her claims regarding the purchase agreement in the civil action would affect her interests in the eviction proceeding, beyond stating that the related proceeding would determine her possessory rights. The letter brief asserted that appellant's defenses and counterclaims in the eviction proceeding are also at issue in the related civil action, but it did not identify specific defenses or counterclaims or explain how they are necessary to a fair determination of the eviction action.

The housing court also examined appellant's complaint in the related civil action. The complaint only addressed respondent's purported declaratory cancellation of the purchase agreement on March 24, 2015, and appellant's request for injunctive relief. The complaint did not set forth any of the additional contract claims that appellant now raises.[1] The housing court observed that while the two actions involved the same property, the actions are independent of each other in the sense that, regardless of the outcome of the related civil action, respondent could bring the eviction action based on appellant's failure to close on July 31, 2015.

The district court did not abuse its discretion when it declined to grant appellant a stay. The issues raised in the related civil action revolved around appellant's alleged failure

---

[1] Appellant states that she amended her complaint to include additional claims such as breach of the purchase agreement, fraud, and tortious interference with contract, but it does not appear that her amended complaint had been filed at the time the district court reviewed the housing court's decision. The amended complaint was certainly not before the housing court, as appellant states that she served the amended complaint since perfecting her appeal of the eviction matter. When reviewing a housing court decision, the district court is to review only the record that was created in front of the housing court. Minn. Gen. R. Pract. 611(a). The impact of the claims arising out of this amended complaint is not properly before this court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

to meet conditions set forth in the purchase agreement, such as payment of per-diem monies starting on March 1, 2015, and unauthorized withdrawal of earnest money. The later eviction action raised the issue of whether appellant was unwilling or unable to close by July 31, 2015. Appellant's defenses and counterclaims in the eviction action focus on what she characterizes as respondent's obstructionist demands at closing and her excusable inability to close due to her medical condition. It remains unclear how a determination of appellant's claims in the related civil action is essential to her defense in the eviction action.

Appellant states that this court has held it is an abuse of discretion not to grant a stay of an eviction proceeding when "the merits of an eviction action depend[] entirely on whether the current possessor of the property was in breach of an agreement allowing them to possess it." *Fed. Home Mortg. Corp. v. Mitchell*, 862 N.W.2d 67, 74 (Minn. App. 2015), *review denied* (Minn. June 30, 2015). But this case does not support the argument that the district court abused its discretion when it declined to grant a stay. *Mitchell* indicates that when the outcome of an eviction action depends on whether the terms of an agreement granting possession had been violated, that issue may be addressed in the eviction action or by staying the eviction action pending resolution of the related civil action. *Id*.

Additionally, there is no evidence that appellant requested an injunction from the court where the related civil action is pending. "Settled law holds that a stay is not necessary in an eviction action when adequate alternatives are available, such as . . . seeking an injunction from the court where other claims are pending." *Hanson*, 841 N.W.2d at 166. For all of the foregoing reasons, even if appellant's request for a stay had

11

been timely, the district court did not abuse its discretion in declining to stay the eviction proceeding.

**III.**

Appellant argues that the district court exceeded the scope of an eviction proceeding by deciding whether the parties' purchase agreement was cancelled by its own terms. "Eviction actions are summary proceedings that are intended to adjudicate only the limited question of present possessory rights to the property." *Hanson*, 841 N.W.2d at 164; *see also* Minn. Stat. § 504B.001, subd. 4 (2014) (defining "eviction" as "a summary court proceeding to remove a tenant or occupant from or otherwise recover possession of real property by the process of law set out in this chapter"). A person who is entitled to a disputed property may recover possession of it through an eviction proceeding when "any person holds over real property . . . after termination of contract to convey the property." Minn. Stat. § 504B.285, subd. 1(a)(ii) (2014).

"Parties generally may not litigate related claims in an eviction proceeding," but defendants may "raise defenses and counterclaims that fit within the limited scope of an eviction proceeding." *Hanson*, 841 N.W.2d at 164. Where defenses and counterclaims exceed the scope of a summary proceeding, an appellant may commence a separate proceeding and "raise their counterclaims and equitable defenses directly in that separate, district court proceeding, where they can also seek to enjoin prosecution of the eviction action." *AMRESCO Residential Mortg. Corp. v. Stange*, 631 N.W.2d 444, 445-46 (Minn. App. 2001).

12

Appellant argues that her possessory right under the purchase agreement could not be determined without considering equitable claims and defenses that are beyond the scope of an eviction proceeding, and that she was therefore limited in her presentation of the evidence and issues.

The district court did not err in limiting the issues and evidence. Respondent's eviction action asserted that appellant remained in possession of the property after cancellation of the purchase agreement. Respondent alleged that a condition of the purchase agreement—closing by July 31—had not been met, so by operation of that contractual term, the purchase agreement was cancelled. To determine appellant's present possessory right to the property, the district court had to determine whether the contract to convey the property had terminated and whether appellant remained in possession after termination. *See* Minn. Stat. § 504B.285, subd. 1(a)(ii) (listing this as one of the situations in which a person may recover possession of a disputed property through an eviction proceeding).

Appellant had the opportunity to raise defenses and counterclaims that related to the cancellation of the purchase agreement. She testified that her seizures affected her ability to close on July 31, 2015. Appellant testified to respondent's demand for payment of construction costs and its allegation of mortgage fraud just before the scheduled closing. She argued that respondent's actions caused the failure of the closing on July 31 and that, as a result, she was not unable or unwilling to close on July 31, the purchase agreement did not terminate on that date, and her possessory right remains intact.

The district court determined that appellant was unable or unwilling to close and that, as a result, the purchase agreement cancelled by its own terms. The district court determined that because the purchase agreement created appellant's possessory interest, her possessory interest terminated when the agreement terminated. The court only decided issues that were determinative of present possessory rights to the property.[2]

If appellant had equitable defenses and counterclaims that exceeded the scope of the eviction proceeding, she could have raised them in a separate district court proceeding, where she could also have sought a stay of the eviction proceeding. We have recognized that the availability of alternate process preserves the summary nature of eviction proceedings. *AMRESCO*, 631 N.W.2d at 445-46. At the time of the eviction proceeding on August 25, 2015, there was no other pending action in which the effect of the failure to close on July 31 was at issue. Appellant had apparently not yet amended her complaint in the related civil action in any way that would have raised the same issues, and there is no evidence that she requested a stay of the eviction proceeding in a separate district court proceeding.

## IV.

Appellant argues that the district court also erred in determining that the purchase agreement was cancelled by its own terms. Appellant contends that respondent's

---

[2] In a case where we held that the district court exceeded the scope of an eviction proceeding, the district court determined the prospective rent that could be charged and denied attorney fees under a lease provision. *Eagan E. Ltd. P'ship v. Powers Investigations, Inc.*, 554 N.W.2d 621, 622 (Minn. App. 1996). These issues were not determinative of the present right to possession. *Id.*

anticipatory breach of the purchase agreement excused her performance; that his actions made the July 31, 2015 closing impossible; that her seizures incapacitated her and excused her failure to close on July 31; and that, as a result, she is not in default of the purchase agreement.

We review the district court's findings of fact in an eviction action for clear error. *Minneapolis Cmty. Dev. Agency v. Smallwood*, 379 N.W.2d 554, 555 (Minn. App. 1985), *review denied* (Minn. Feb. 19, 1986). Findings of fact are clearly erroneous when, upon review of the record, this court is unable to find "reasonable evidence" to support the district court's findings. *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotation omitted). We give due regard to the district court's opportunity to judge the credibility of witnesses, and we consider the adopted findings of the housing court to be the findings of the district court. Minn. R. Civ. P. 52.01. We review the district court's conclusions of law de novo. *In re Estate of Barg*, 752 N.W.2d 52, 63 (Minn. 2008).

Contract construction is "a question of law unless the contract is ambiguous." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003). "The plain and ordinary meaning of the contract language controls, unless the language is ambiguous." *Bus. Bank v. Hanson*, 769 N.W.2d 285, 288 (Minn. 2009). "Whether a contract is ambiguous is a question of law that we review de novo. The language of a contract is ambiguous if it is susceptible to two or more reasonable interpretations." *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010) (citation omitted).

15

The district court focused on the meaning and operation of this condition in the addendum to the purchase agreement: "In the event [appellant] is unable or unwilling to complete purchase by July 31, 2015, this purchase agreement shall be deemed cancelled and all monies paid thereunder shall be forfeited to [respondent]." During trial, appellant argued that the term "unable" is ambiguous. The purchase agreement does not define the term, so we apply the plain and ordinary meaning. "Able" means "having sufficient ability or resources." *The American Heritage College Dictionary* 3 (3d ed. 1997). The prefix "un" indicates the opposite of the stem to which it is attached. *Id.* at 1465. And "ability" is defined as "the quality of being able to do something; the physical, mental, financial, or legal power to perform." *Id.* at 3. The combination of "unable" with "unwilling" further suggests that "unable" refers to a lack of capacity, because "unwilling" refers to a disinclination or lack of desire to do something. The use of both words indicates that the parties intended each word to communicate something different. *See Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990) (stating that because courts presume that parties intend contract language to have effect, courts "will attempt to avoid an interpretation of the contract that would render a provision meaningless"). Applying the plain meaning of the word "unable" to the condition in question, it is clear that if appellant does not have the capacity to perform by July 31, 2015, the purchase agreement terminates.

Appellant argues that the district court erred by failing to consider whether respondent was to blame for the failure to close on July 31, 2015. She contends that the

16

court ignored respondent's actions leading up to the scheduled closing and disregarded testimony that favored appellant.

The district court's findings of fact on this issue are supported by the record and are not clearly erroneous. During the eviction proceeding, appellant elicited testimony from witnesses that respondent made last-minute demands for payment and alleged that she was engaging in mortgage fraud. Appellant testified about her seizures and argued that her medical condition made it impossible to complete the closing by the deadline.

However, trial testimony supports the conclusion that respondent's actions and appellant's health had no bearing on appellant's failure to perform by July 31, 2015. Testimony of the mortgage closer and the loan officer indicates that appellant's failure to close on her other residence made her unable to close on the purchase of unit #200 on July 31. The record also supports the conclusion that appellant's medical condition did not cause her failure to close on the sale of her other residence. A witness who was involved with that sale testified that resolution of the underwriting problem—which was the source of the delay on that closing—required an exchange of paperwork between a homeowner's association, the mortgage originator, and the underwriter. No evidence indicates that appellant's involvement was necessary at that stage. The district court did not err in determining that appellant failed to perform and the purchase agreement was therefore cancelled by its own terms.

**Affirmed.**