**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1951**

Juan Cuate,
Respondent,

vs.

Pedro Cuate-Dominguez, et al.,
Appellants.

**Filed September 16, 2024
Affirmed
Ede, Judge**

Dakota County District Court
File No. 19HA-CV-23-4848

John G. Westrick, Samuel Savage, Savage-Westrick, PLLP, Bloomington, Minnesota (for respondent)

Daniel M. Eaton, Waypoint Law PLLC, Minneapolis, Minnesota (for appellants)

Considered and decided by Frisch, Presiding Judge; Ede, Judge; and Halbrooks, Judge.[*]

**SYLLABUS**

For the purpose of determining the notice period to terminate a tenancy at will under Minnesota Statutes section 504B.135 (Supp. 2023), "rent" means regular, periodic consideration paid for the use or occupation of property.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION**

**EDE**, Judge

In this appeal from an eviction judgment for respondent-landlord, appellant-tenants assert that the district court abused its discretion (1) by requiring only a one-month notice period to terminate their tenancy at will under Minnesota Statutes section 504B.135 (Supp. 2023) and (2) by rejecting their retaliation defense. We conclude that, because appellants paid monthly rent in the form of mortgage payments to respondent's mortgagee, the district court did not abuse its discretion in requiring only a one-month notice period. We also conclude that the district court did not abuse its discretion in determining that appellants failed to establish a retaliation defense. We therefore affirm.

**FACTS**

In 2016, respondent Juan Cuate bought a residence in South St. Paul. At the time Cuate purchased the home, he planned for his aunt and uncle, appellants Pedro Cuate-Dominguez and Francisca Roldan, to buy the property within two years. The parties orally agreed that appellants would reside in the home and make monthly mortgage payments directly to respondent's mortgagee until appellants completed their purchase of the residence in the two-year period that followed. But the parties never memorialized their agreement in writing.

Appellants failed to buy the property from respondent within two years. Instead, they continued living in the home and paid the mortgage each month from 2016 until 2023. During that time, the mortgage payments were due in the first half of each month. Appellants' son made the mortgage payments to respondent's mortgagee out of Roldan's

2

bank account. One exception to this practice occurred in November 2023, when appellants mailed payment to respondent instead of directly paying respondent's mortgagee.

In 2023, appellants asked respondent to transfer title, but the parties could not agree on a purchase price for the residence. On September 26, 2023, respondent mailed appellants a written notice terminating the tenancy at will because he intended to sell the property. The notice informed appellants that they had until November 1, 2023, to vacate the premises. Appellants refused to leave the residence and would not provide respondent with a copy of the keys to the property, preventing prospective buyers and real estate professionals from accessing the home. Respondent filed an eviction complaint. The matter proceeded to a two-day court trial in December, during which the district court heard testimony from respondent, Roldan, and appellants' son.[1]

The district court later filed findings of fact, conclusions of law, and an order in respondent's favor, and the court separately entered judgment for respondent. The district court found that "[t]he parties had an oral month-to-month lease regarding the property at issue" and that "[t]he notice was mailed on September 26, 2023 and received on September 29, 2023." Based on these findings, the district court determined that respondent had provided appellants "sufficient notice to vacate by the end of the day on October 31, 2023[,]" that "[t]he fact that the notice indicated [appellants] had to vacate on or before November 1, 2023, [did] not invalidate the notice[,]" and that the "[n]otice to vacate was

---

[1] Consistent with the applicable standard of review, this factual summary is based on the evidence adduced at trial and other relevant proceedings before the district court, presented in the light most favorable to the court's decision and with deference to the court's credibility determinations.

properly given and [appellants] . . . failed to vacate said property." Although the district court acknowledged appellants' "assert[ion] that [respondent was] retaliating against them because they asserted their rights under an oral agreement to purchase the home[,]" the district court reasoned that "a contract to purchase the real estate must be in writing pursuant to the statute of frauds"[2] and that "[a]ny alleged [oral] contract to purchase is void under the statute." The district court therefore ruled that respondent could not "retaliate against [appellants] for asserting a right under a void contract" and that "[t]here is otherwise insufficient evidence to prove that [respondent's] notice to vacate was retaliatory under the existing month-to-month lease."

This appeal follows.

**ISSUES**

I.     Did the district court abuse its discretion by determining that respondent had provided appellants sufficient notice to terminate the tenancy at will?

II.    Did the district court abuse its discretion by determining that appellants failed to establish a retaliation defense?

---

[2] The statute of frauds, codified in Minnesota Statutes sections 513.01 through 513.07 (2022), provides in relevant part:

> Every contract for the leasing for a longer period than one year or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made, or by the party's lawful agent thereunto authorized in writing; and no such contract, when made by an agent, shall be entitled to record unless the authority of such agent be also recorded.

Minn. Stat. § 513.05 (2022).

4

**ANALYSIS**

Appellants challenge the district court's eviction judgment in two ways. First, appellants assert that the district court abused its discretion by requiring only a one-month notice period to terminate the tenancy at will under Minnesota Statutes section 504B.135. Second, appellants contend that the district court abused its discretion by rejecting their retaliation defense. As explained below, we disagree with both arguments.

"[A]n eviction is a summary proceeding to determine an individual's possessory rights to real property." *Nationwide Hous. Corp. v. Skoglund*, 906 N.W.2d 900, 907 (Minn. App. 2018) (citing Minn. Stat. § 504B.001, subd. 4 (2016)), *rev. denied* (Minn. Mar. 28, 2018). "On review of a district court order in an eviction action, we defer to the district court's findings of fact, and those findings will be upheld unless they are clearly erroneous." *NY Props., LLC v. Schuette*, 977 N.W.2d 862, 864-65 (Minn. App. 2022); *see also Bass v. Equity Residential Holdings, LLC*, 849 N.W.2d 87, 91 (Minn. App. 2014) ("We review the district court's findings for clear error and in the light most favorable to the district court's decision, and defer to the district court's credibility determinations."). "In applying the clear-error standard, [an appellate court] view[s] the evidence in a light favorable to the findings" and "will not conclude that a factfinder clearly erred unless, on the entire evidence, [the court is] left with a definite and firm conviction that a mistake has been committed." *In re Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotations and citations omitted); *see also Schuette*, 977 N.W.2d at 865 (quoting this aspect of *Kenney*).

"As for mixed questions of fact and law, we correct erroneous applications of law but defer to the district court's ultimate conclusions, which we review for abuse of discretion." *Schuette*, 977 N.W.2d at 865. And "[t]he interpretation of a statute is a question of law that [appellate courts] review de novo." *Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016); *see also Hous. & Redevelopment Auth. of St. Cloud v. Royston*, 990 N.W.2d 730, 735 (Minn. App. 2023) (quoting this aspect of *Cocchiarella* in an eviction appeal), *rev. denied* (Aug. 22, 2023).

We address each of appellants' assertions below.

## I. The district court did not abuse its discretion by determining that respondent provided appellants sufficient notice to terminate the tenancy at will.

Acknowledging that they occupied the residence as tenants at will, appellants nonetheless maintain that they "did not pay rent" to respondent and instead "paid the costs of the home." According to appellants, "because no rent [was] due, respondent needed to allow appellants three months to vacate" under Minnesota Statutes section 504B.135. Given that respondent only provided appellants notice one month before the termination of their tenancy at will, appellants argue that the notice was "void" and that the district court abused its discretion in determining that it was sufficient. Respondent counters that, because appellants "made monthly periodic payments (albeit to the mortgage company) to remain on the premises[,]" appellants paid monthly rent and the district court did not abuse

its discretion when it determined "that the notice to vacate was timely." We agree with respondent.[3]

A tenancy at will "means a tenancy in which the tenant holds possession by permission of the landlord but without a fixed ending date." Minn. Stat. § 504B.001, subd. 13 (2022); *see also Thompson v. Baxter*, 119 N.W. 797, 797-98 (Minn. 1909) (explaining that a tenancy at will "arise[s] by implication of law . . . where the tenant enters into possession under an agreement to execute a contract for a specific term and [they] subsequently refuse[] to do so, or one who enters under a void lease"). "A tenancy at will may be terminated by either party by giving notice in writing. The time of the notice must be at least as long as the interval between the time rent is due or three months, whichever is less." Minn. Stat. § 504B.135. As used in section 504B.135, the term "rent" is not defined

---

[3] We are also unpersuaded by appellants' contention that respondent violated the South St. Paul Code of Ordinances by failing to obtain a rental license and that respondent therefore could not have collected "rent" for the purpose of determining the notice period under Minnesota Statutes section 504B.135. Appellants rely on two nonprecedential cases in support of this argument. Both are distinguishable. In the first case appellants cite, we "conclude[d] that an eviction was not proper, in part, because respondent lacked a rental license," but we also stated that "respondent and those in his situation are not without recourse" because "[r]espondent could have obtained an eviction with proper notice to quit." *Wajda v. Schmeichel*, No. A18-0060, 2018 WL 6165295, at *4 (Minn. App. Nov. 26, 2018), *rev. denied* (Minn. Feb. 19, 2019). As explained below, obtaining an eviction with proper notice to quit is exactly what respondent did here. The second case appellants cite is likewise inapposite because it is an appeal from an eviction action "based solely on [tenants'] failure to pay rent[,]" not on termination of a tenancy at will after written notice under section 504B.135, as in this case. *See Beaumia v. Eisenbraun*, No. A06-1482, 2007 WL 2472298, at *1 (Minn. App. Sept. 4, 2007). Thus, even assuming without deciding that respondent failed to obtain a rental license, that failure—while troubling—would not alter our conclusion that the district court did not abuse its discretion by determining that respondent provided appellants sufficient notice under section 504B.135.

by chapter 504B or another applicable statute. Nor has any precedential opinion defined "rent" for purposes of section 504B.135.

Thus, to resolve the issue presented in this appeal, we must interpret section 504B.135, which requires our de novo review. *See Royston*, 990 N.W.2d at 735. "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." *Id.* (quoting Minn. Stat. § 645.16 (2022)). "When interpreting a statute, [appellate courts] must look first to the plain language of the statute." *Id.* (alteration in original) (quoting *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 496 (Minn. 2009)). "When a statute's language is plain, the sole function of the courts is to enforce the statute according to its terms." *Id.* (quoting *Engfer v. Gen. Dynamics Advanced Info. Sys., Inc.*, 869 N.W.2d 295, 300 (Minn. 2015)). We therefore apply the plain meaning of unambiguous statutes and we do not "explore [an unambiguous statute's] spirit or purpose." *Id.* (quoting *Cocchiarella*, 884 N.W.2d at 624). "To determine the plain meaning of a statute, the words and phrases in the statute are construed according to rules of grammar and according to their common and approved usage." *Id.* (quoting *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019)). "[W]here the Legislature has not provided definitions of the relevant terms, [appellate courts] may consider dictionary definitions to determine a word's common usage." *Laymon v. Minn. Premier Props., LLC*, 913 N.W.2d 449, 453 (Minn. 2018); *see also Quinn v. LMC NE Minneapolis Holdings, LLC*, 972 N.W.2d 881, 887 (Minn. App. 2022) (quoting this aspect of *Laymon* in an eviction appeal), *rev. granted* (June 29, 2022) *and appeal dismissed*, 985 N.W.2d 571 (Minn. 2023).

The Black's Law Dictionary definition of "rent" is "[c]onsideration paid, usu[ally] periodically, for the use or occupancy of property (esp[ecially] real property)." *Black's Law Dictionary* 1554 (12th ed. 2024). This definition aligns with other definitions of "rent" used by the Minnesota Supreme Court in contexts aside from section 504B.135. *See, e.g., Nelson's Off. Supply Stores, Inc. v. Comm'r of Revenue*, 508 N.W.2d 776, 778 (Minn. 1993) (in a certiorari appeal from the Minnesota Tax Court under the Minnesota Apportionment and Alternative Minimum Tax statutes, observing that "Black's Law Dictionary defines 'rent' as 'consideration paid for use or occupation of property'"); *State v. Royal Min. Ass'n*, 156 N.W. 128, 129 (Minn. 1916) (in a property tax appeal concerning iron mining leases, defining rent as "the compensation which the occupier pays the landlord for that species of occupation which the contract between them allows" (quotation omitted)). We therefore hold that, for the purpose of determining the notice period to terminate a tenancy at will under section 504B.135, "rent" means regular, periodic consideration paid for the use or occupation of property.

Applying this definition of "rent," we conclude that the district court did not abuse its discretion by determining that the one-month notice respondent provided to appellants was sufficient under section 504B.135. It is undisputed that appellants had a tenancy at will based on the parties' oral agreement that appellants could continue residing in the residence in exchange for making monthly mortgage payments directly to respondent's mortgagee. These payments were "consideration," which is generally defined as "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something, esp[ecially] to engage in a legal

9

act." *Black's Law Dictionary*, *supra*, at 384. Indeed, the record reflects that appellants lived in the residence for seven years while making payments to respondent's mortgagee in the first half of each month, the only exception being the November 2023 payment that appellants mailed to respondent. Thus, each monthly mortgage payment constituted rent for the purpose of section 504B.135 because it was regular, periodic consideration paid by appellants for the use and occupation of the property. And because on September 26, 2023, respondent mailed appellants notice that the tenancy at will would terminate on November 1, 2023, "[t]he time of the notice" that respondent provided appellants was "at least as long as the interval between the time rent is due"—one month.[4] Minn. Stat. § 504B.135.

We therefore conclude that the district court did not abuse its discretion in determining that respondent provided appellants sufficient notice to terminate the tenancy at will.

---

[4] Although we recognize that the district court did not explicitly find that the "interval between the time the rent [was] due" for purposes of Minnesota Statutes section 504B.135 was one month, that finding was implicit in the district court's determination that respondent had provided appellants "sufficient notice to vacate by the end of the day on October 31, 2023[,]" by mailing the notice on September 26, 2023, which appellants received on September 29, 2023. *See White Earth Hous. Auth. v. Schwabe*, 375 N.W.2d 568, 570 (Minn. App. 1985) (recognizing an implicit finding that a housing authority's unlawful detainer action did not constitute a retaliatory eviction in a district court's determination that a tenant had violated the terms of her lease (citing *Parkin v. Fitzgerald*, 240 N.W.2d 828 (Minn. 1976))). We also note that appellants do not challenge as clearly erroneous any of the district court's findings about when respondent mailed the notice, when they received it, and the date on which respondent sought termination of the tenancy at will.

**II.** **The district court did not abuse its discretion in determining that appellants failed to establish a retaliation defense.**

Appellants also assert that the district court abused its discretion by rejecting their retaliation defense, maintaining that the eviction was "presumptively retaliatory" because respondent mailed the notice to quit "less than 90 days after appellants sought to secure their rights to the property" by asking respondent to transfer title in 2023.[5] Citing Minnesota Statutes section 504B.285, subdivision 2 (2022), appellants contend that respondent failed to carry his burden of proving that the notice to quit was not mailed in whole or part for a retaliatory purpose. Respondent argues that the district court properly determined that appellants failed to establish a retaliation defense because the parties' oral agreement for appellants to purchase the property within two years was not a "landlord-tenant" contract. We again agree with respondent.

A tenant may defend against "an action for recovery of premises following the alleged termination of a tenancy by notice to quit" if the tenant can "prove by a fair preponderance of the evidence" that "the alleged termination was intended in whole or part as a penalty for the [tenant's] good faith attempt to secure or enforce rights under a lease or contract, oral or written, under the laws of the state or any of its governmental subdivisions, or of the United States." Minn. Stat. § 504B.285, subd. 2. "If the notice to

---

[5] In their brief, appellants state that this request occurred in July 2023. The record citations appellants rely on for that proposition, however, do not reflect that the request occurred in July. Because our conclusion that the district court did not abuse its discretion in rejecting appellants' retaliation defense is unaffected by this factual issue, we assume without deciding that appellants asked respondent to transfer title within 90 days of the September 26, 2023 notice.

11

quit was served within 90 days of the date of" such a good-faith attempt to secure or enforce

rights, "the burden of proving that the notice to quit was not served in whole or part for a

retaliatory purpose shall rest with the [landlord]." *Id.*

Here, the district court determined that respondent could not "retaliate against

[appellants] for asserting a right under a void contract." Although the district court reached

this conclusion based on its determination that appellants' oral agreement to buy the

residence was void under the statute of frauds, we need not decide that issue to conclude

that the district court did not abuse its discretion in rejecting appellants' retaliation

defense.[6]

---

[6] We are mindful of appellants' argument that the district court "erred by making a finding beyond its authority" in ruling that the oral purchase agreement was void under the statute of frauds. *See Eagan E. Ltd. P'ship v. Powers Investigations, Inc.*, 554 N.W.2d 621, 622 (Minn. App. 1996) (concluding that the district court "went beyond deciding issues determinative of the present right to possession" and "beyond the scope of an unlawful detainer" when it ruled on rent-increase clauses of commercial tenants' leases and a request for attorney fees). But even assuming without deciding that the district court went beyond the issues determinative of respondent's present right to possession here, appellate courts "will not reverse a correct decision simply because it is based on incorrect reasons." *Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987); *see also* Minn. R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). We nevertheless note that, according to their brief, appellants have reportedly commenced a separate action in the district court to determine their rights to the property under a constructive trust. We express no opinion about the validity of appellants' oral agreement to buy the residence for purposes of their constructive-trust action, and nothing in this opinion should be construed as deciding any of the parties' rights to the property beyond the eviction appeal that is before us. *Cf. Amresco Residential Mortg. Corp. v. Stange*, 631 N.W.2d 444, 444 (Minn. App. 2001) (affirming the district court's rejection of appellants' "proposal to enlarge the nature and scope of the eviction proceeding to hear their claims that respondent . . . was not entitled to possession of the property because of alleged defects in their underlying foreclosure" based on the conclusion that "appellants . . . chose[] the wrong forum to bring their claims").

Appellants' use and occupancy of the residence under a tenancy at will is undisputed and evinced by the record. As appellants acknowledge, "the parties did not enter into a lease or other formal agreement." Construing Minnesota Statutes section 566.03, subdivision 2(1) (1996)—a predecessor statute to section 504B.285, subdivision 2—we have concluded that "the term contract" for purposes of a "good faith attempt to secure or enforce rights under a lease or contract, oral or written . . . mean[s] a contract governing the landlord-tenant relationship." *Cloverdale Foods of Minn., Inc. v. Pioneer Snacks*, 580 N.W.2d 46, 51 (Minn. App. 1998) (quotation omitted). Given that appellants' tenancy at will stemmed from their continued possession of the premises with respondent's permission but without a fixed ending date, lease, or other formal agreement, *see* Minn. Stat. § 504B.001, subd. 13, we cannot say that appellants' oral agreement to buy the residence within two years of their use and occupancy of the premises in 2016 was a contract that governed the parties' landlord-tenant relationship in 2023. We therefore conclude that the district court did not abuse its discretion by determining that appellants' 2023 request that respondent transfer title to them was not a good-faith attempt to secure or enforce rights under a contract for purposes of section 504B.285, subdivision 2(1).

We likewise conclude that the district court did not abuse its discretion by deciding that "[t]here is otherwise insufficient evidence to prove that [respondent's] notice to [quit] was retaliatory under the existing month-to-month lease." Even if respondent bore "the burden of proving that the notice to quit was not served in whole or part for a retaliatory purpose" under section 504B.285, subdivision 2, the Minnesota Supreme Court has held that "[a] nonretaliatory reason is a reason wholly unrelated to and unmotivated by any

13

good-faith activity on the part of the tenant protected by the statute[,]" such as "nonpayment of rent, other material breach of covenant, continuing damage to premises by tenants, or removal of housing unit from market for a sound business reason[]." *Parkin*, 240 N.W.2d at 832-33. And nothing in the record suggests that respondent's notice to quit followed a statutorily protected good-faith activity by appellants, such as reporting housing code violations to authorities. *See id.* (holding that an eviction was retaliatory where "the sequence of events . . . reveal[ed] a clear relationship between the notice to quit and [the] landlord's reaction to [the] tenants' protected activities."); *see also* Minn. Stat. § 504B.285, subd. 2(2) (providing for a retaliation defense where "the alleged termination was intended in whole or part as a penalty for the [tenant's] good faith report to a governmental authority of the [landlord's] violation of a health, safety, housing, or building code or ordinance"). Respondent testified that he decided to end the tenancy at will because he intended to sell the property. Viewing the evidence in the light most favorable to the district court's decision and deferring to the court's findings of fact and credibility determinations, we are not left with a definite and firm conviction that the court committed a mistake in determining that the record did not sufficiently demonstrate that respondent's notice to quit was retaliatory. *See Kenney*, 963 N.W.2d at 221; *Schuette*, 977 N.W.2d at 864-65; *Bass*, 849 N.W.2d at 91.

We therefore conclude that the district court did not abuse its discretion by rejecting appellants' retaliation defense.

**DECISION**

Under Minnesota Statutes section 504B.135, to determine the notice period to terminate a tenancy at will, "rent" means any regular, periodic consideration paid for the use or occupation of property. Because appellants had a tenancy at will and paid monthly rent in the form of mortgage payments, the proper notice period per section 504B.135 was one month, and the district court did not abuse its discretion by determining that respondent provided appellants sufficient notice. Nor did the district court abuse its discretion by rejecting appellants' retaliation defense.

**Affirmed.**