OPINION
DIETZEN, Justice.
The question presented in this appeal is whether a person must physically occupy a dwelling in a residential building to qualify as a “residential tenant” under Minnesota’s unlawful exclusion or removal statute, MinmStat. § 504B.375 (2014). Appellant Mary Cocchiarella brought an unlawful exclusion petition under the statute to enforce her agreement with respondent Donald Driggs to rent an apartment located in Hennepin County. Driggs requested and received the first month’s rent and a security deposit, and agreed to rent the residential premises to Cocchiarella. He later refused to deliver physical possession of the premises to her. The housing referee recommended granting Driggs’s motion to dismiss, concluding that Cocchiarella did not qualify as a “residential tenant” under the unlawful exclusion statute because she was not physically “occupying” the residential premises, see MinmStat. § 504B.001, subd. 12 (2014). The district court adopted the referee’s decision, and *623 the court of appeals affirmed. For the reasons that follow, we reverse the dismissal and remand to the district court for further proceedings.
In late January 2014, Cocchiarella observed a “for rent” sign and phone number attached to the fagade of a three-unit residential building. Cocchiarella contacted Driggs, who informed Cocchiarella that all three units were available for rent. When viewing the units, Cocchiarella noticed that Driggs had personal property inside of Unit 3 — the unit at issue here — but Driggs assured her that Unit 3 was available for rent. Cocchiarella informed Driggs that she was interested in renting Unit 3, and Driggs “agreed to rent [Unit 3] to [Coc-chiarella] at that time.”
On February 1, 2014, Cocchiarella went to the premises to determine when Driggs would “fill out paperwork” and she could begin to move in. Driggs told Cocchiarella that “move-in would be a couple of days later” because he needed to varnish the floors. Later that day, Driggs requested that Cocchiarella return on February 3 to sign a lease and that she bring $2,400 in cash for her security deposit and the February rent. Cocchiarella returned to the premises on February 3, paid Driggs $2,400, and expected to move in at that time. Driggs gave Cocchiarella a receipt for her payment, told her that he was ill, and asked- her to come back the following day.
When Cocchiarella returned .to the apartment the next day, Driggs requested that Cocchiarella obtain a co-signer for her lease. Cocchiarella returned that evening with her roommate, J.B., who completed “a co-signed rental application” with her. Cocchiarella asked Driggs when she could move into the apartment, and Driggs stated that he needed a “couple of days to remove his belongings” before she could move in. Two days later, Cocchiarella and J.B. returned to the premises and again asked Driggs when he would permit her to move in. Driggs “became angry” and “demanded” that Cocchiarella and J.B. leave, which they did. On February 10, Driggs left Cocchiarella a voicemail, stating that she should return to the premises so Driggs could give back the security deposit. After some discussion with Cocchiarel-la at the apartment, Driggs “changed his mind” and again told Cocchiarella that he would remove his belongings in a couple of days and that she could move in “later that week.” Driggs did not offer to return the $2,400 Cocchiarella had given him for the security, deposit and February rent payment. On February 11, Cocchiarella left Driggs a voicemail stating that, unless Driggs provided her the keys for immediate move-in, she would file a “lockout petition” with the housing court. Driggs did not give Cocchiarella the keys to the premises.
Cocchiarella filed a petition with the housing : court under Minn.Stat. § 504B.375, seeking possession of the apartment on the ground that she was unlawfully excluded from the premises. The housing court referee recommended that Cocchiarella’s petition be dismissed, concluding that she was not a “residential tenant” as required under the- unlawful exclusion or removal statute, see Minn. Stat. § 504B.375, subd. 1(a). Specifically, the referee reasoned that Cocchiarella had not physically occupied the premises, and therefore she was not a “residential tenant” who was “occupying a dwelling in a residential building” within the meaning of chapter 504B, see MinmStat. §, 504B.001, subd. 12 (emphasis- added). The district court adopted the referee’s conclusions in all respects and dismissed Cocchiarella’s petition.
The court of appeals affirmed the dismissal, -concluding that a person is a “resi *624 dential tenant” only “if the. person actually had taken possession of rental property and had begun residing there before the filing of a petition.” Cocchiarella v. Driggs, 870 N.W.2d 103, 106 (Minn.App.2015). Because Driggs precluded Coc-:chiarella from physically occupying the premises, the court of appeals reasoned that Cocchiarella was not a “residential tenant,” and therefore could not bring an unlawful exclusion petition under Minn. Stat. § 504B!375. 870 N.W.2d at 107. We granted Cocchiarella’s petition for review.
I.
Cocchiarella argues on appeal that she qualifies as a “residential tenant” under Minn.Stat. § 504B.375, and is therefore entitled to recovery of the leased premises. According to Cocchiarella, the present legal right of occupancy is sufficient to qualify as a “residential tenant” under section 504B.375, because actual, physical occupancy of the premises is not required. Driggs responds that absent actual, physical occupancy of the leased premises, Cocchiarella may not bring a petition under the statute.
The interpretation of a statute is a question of law that we review de novo. In re, Welfare of J.J.P., 831 N.W.2d 260, 264 (Minn.2013). Our review of a district court’s decision to grant a motion to dismiss-is also de novo. Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 831 (Minn.2011). In reviewing the grant of a motion to dismiss, we “consider only the facts alleged in the complaint, accepting those facts as true and [construing] all reasonable inferences in favor of the nonmoving party,” which in this case is Cocchiarella. See id. (quoting Bodah v. Lakeville Motor Express, Inc., 663 N.W.2d 550, 553 (Minn.2003)).
The object of all statutory interpretation is to ascertain and effectuate the intention of the Legislature. Staab v. Diocese of St. Cloud, 813 N.W.2d 68, 72 (Minn.2012) (citing Minn.Stat. § 645.16 (2014)). In accordance "with our canons of interpretation, we construe technical words and phrases “according to [their] special meaning,” and other words and phrases according to their “¿ommon and approved usage.” Id.; MinmStat. § 645.08(1) (2014). Further, we interpret the statute as a whole, considering the provision at issue “in light of the surrounding sections to avoid conflicting interpretations.” Am. Family Ins. Grp. v. Schroedl, 616 N.W.2d 273, 277 (Minn.2000). Indeed, we must construe a statute “to give effect to all of its provisions.” Minn.Stat. § 645.16 (2014). When interpreting a statute, our first step is to “examine the statutory language to determine whether the words of the law are clear and free from all ambiguity.” Staab, 813 N.W.2d at 72. When the language of a statute is clear, wé apply the plain language of the statute and decline to explore its’spirit or purpose. In re Welfare of J.J.P., 831 N.W.2d at 264.
At’ this stage of the proceedings, we accept as true Cocchiarella’s contentions in her petition: that she entered into an oral lease with Driggs for the residential premises before February 1, 2014, was told on February l.that she could move in “a couple of days later,” paid Driggs the security deposit and February rent on February 3, and was thereafter unlawfully excluded from exercising her legal right to occupy the premise^.[1] See Park Nicollet *625 Clinic, 808 N.W.2d at 831. The only issue for us to decide is whether Cocchiarella satisfied the definition of “residential tenant” under Minnesota Statutes chapter 504B when she held the present legal right to possess the premises but did not hold a key or otherwise physically occupy the premises.
Chapter 504B sets forth the remedies available .to tenants for the violation of a lease covered by the chapter. See Minn. Stat. § 504B.001, subd. 14(3). Unlawful removal or exclusion from residential rental property is one such violation addressed by chapter 504B. See Minn.Stat. § 504B.375. Specifically, section 504B.375 sets forth the procedures by which a “residential tenant” may “recover possession” of residential rental property from which the residential tenant was actually or constructively removed or excluded. Id., subds. 1, 5. Under chapter 504B, a “residential tenant” is defined as
a person who is occupying a dwelling in a residential building under a lease or contract, whether oral or written, that requires the payment of money or exchange of services, all- other regular occupants of that dwelling unit, or a resident of a manufactured home park.
Minn.Stat. § 504B.001, subd. 12 (emphasis added).
Driggs does not dispute that Cocchiarel-la has satisfied the “payment of money” requirement for qualifying as a “residential tenant.” The crux of the dispute is whether Cocchiarella “is occupying” the leased premises within the meaning of the statute. The word “occupying” derives from the verb “to occupy,” which has a variety of meanings depending on the context in which it appears. Specifically, the dictionary definition of “occupy” includes: “1. To fill up (time or space)”; “2. To dwell or reside in”; “3. To hold or fill (an office or a position)”; “4. To seize possession of and maintain control over by or as if by conquest”; and “5. To engage or employ the attention or concentration of.” The American Heritage Dictionary of the English Language 1215 (4th ed.2000). The derivative word “occupancy” is defined as “[t]he act, state, or condition of holding, possessing, or residing in or on something; actual possession, residence, or tenancy, esp. of a dwelling or land”; and “[t]he period or term during which one owns, rents, or otherwise occupies property.” Occupancy', Blank’s Law Dictionary (10th ed.2014) (emphasis added). “Holding],” in turn, can be defined as “[t]o be the legal possessor of,” lending some support to an interpretation of “occupying*’ that includes legal possession. The American Heritage Dictionary of the English Language 836 (4th ed.2000).
These varied dictionary 'definitions, by themselves, do not resolve the question of whether the phrase “is occupying” refers only to physical occupancy, or whether it also includes the present legal right of occupancy. When a word has a variety of meanings, we examine the context in which the word appears. See Spaeth v. Hallam, 211 Minn. 156, 158, 300 N.W. 600, 601 (1941) (indicating that when a word and-its derivatives have' a variety of meanings, context is crucial). . Both the statutory and legal context of the phrase “is occupying” *626 support an interpretation that includes not only physical occupancy, but also the legal right of occupancy.
The context in which “is occupying” appears in the statute supports an interpretation that the phrase includes the present legal right to occupy. Specifically, the phrase “is occupying” refers to “a dwelling in a residential building under a lease or contract.” Minn.Stat. § 504B.001, subd. 12. Chapter 504B defines a “lease” as “an oral or -written agreement creating a tenancy in real property.” Id., subd. 8 (emphasis added). A tenancy is commonly understood to mean the “[possession or occupancy of lands, buildings, or other property by title, under a lease, or on payment of rent.” The American Heritage Dictionary of the English Language Í782 (4th ed.2000) (emphasis added); accord Tenancy, Black’s Law Dictionary (10th ed.2014). Thus, under chapter 504B, á lease agreement creates a tenancy, which includes the legal right of occupancy by title, lease, or payment of rent. A residential tenant who “is occupying a dwelling” under “a lease or contract” therefore includes one who has the legal right of occupancy.[2]
Moreover, the common law meaning of the phrase “is occupying” in the context of the landlord-tenant relationship supports this interpretation; The creation of the landlord-tenant relationship involves the transfer of possession and occupation of the leased premises. At common law, a landlord-tenant relationship can be created orally, and requires only that the right to present possession of the premises be transferred from the landlord to the tenant. Restatement (Second) of Prop.: Landlord and Tenant §§ 1.2, 2.1 (Am. Law Inst.1977); see Gates v. Herberger, 202 Minn. 610, 612, 279 N.W. 711, 712 (1938) (noting that “[a]ny words that show an intention of the lessor to divest himself of the possession, and confer it upon another, but.in subordination of his own title, is sufficient” to create a tenancy (emphasis added)); State v. Bowman, 202 Minn. 44, 46, 279 N.W. 214, 215 (1938) (noting that a “tenant is one who, holds or possesses lands or tenements by any kind of right or title”); see also Fisher v. Heller, 174 Minn. 233, 236, 219 N.W. 79, 80 (1928) (indicating that' a tenancy was created solely from the payment and acceptance of monthly rent); Thompson v. Baxter, 107 Minn. 122, 123-25, 119 N.W. 797, 797-98 (1909) (noting that a tenancy can be created, either by a lease agreement or by implication of Taw). Consequently, the right of possession is transferred when the lease agreement gives the tenant control over the property and the power to exclude all others.[3] Re *627 statement (Second) of Prop.: Landlord and Tenant § 1.2 (Am. Law Inst.1977); see also Goodwin v. Clover, 91 Minn. 438, 439-40, 98 N.W. 322, 323 (1904) (describing the tenant’s right as the “right to occupy” and the “superior right to the possession of the land”).
We conclude that a tenant who holds the present legal right to occupy residential rental property pursuant to a lease or contract satisfies the definition of “residential tenant” under Minn.Stat. § 504B.001, subd. 12. Therefore, upon the effective date of a lease agreement, a tenant has the right to bring an unlawful removal or exclusion petition under . Minn.Stat. § 504B.375, subd. 1. Two primary reasons support our conclusion.
First, the word “occupying” has a definite and well-understood special or technical meaning in the context of the landlord-tenant relationship. See Staab, 813 N.W.2d at 72; In re Pamela Andreas Stisser Grantor Trust, 818 N.W.2d 495, 502 (Minn.2012); see also State v. Rick, 835 N.W.2d 478, 484-85 (Minn.2013) (concluding that a technical meaning was reasonable given the statutory context). The dictionary definitions of “occupy,” the common law, and the meaning of the words “occupancy” and “tenancy” in the landlord-tenant context consistently refer to both physical occupancy and to the legal right of occupancy under a residential lease.
Second, Driggs’s and the court of appeals’ proposed interpretation, which deems physical occupancy a condition precedent, to qualifying as a “residential tenant” under chapter 504B, is unreasonable.[4] This interpretation not only adds a physical occupancy requirement that does not exist at common law, but also conflicts with other provisions of chapter 504B. For example, a consequence of the interpretation proposed by Driggs and the court of appeals is that a tenant who, .prior to move-in, discovers a severe housing code violation — such as. noxious c.onditions or the lack of heat or running water — would not qualify as a “residential tenant”. in order to bring a tenant’s remedies action in district, court, Minn.Stat. § 504B.395, subd. 1(1). Our interpretation extends the remedies under the statute to a tenant who holds the present legal right to occupy residential rental property pursuant to a lease or contract.
A physical occupancy requirement is also in conflict with the definition of “residential building.” Minn.Stat. § 504B.001, subd. 11. Specifically, a “residential building” includes “(1) a building used in whole or in part as -a dwelling” as well as “(2) an unoccupied building which was previously used in whole or in part as a .dwelling and which constitutes a nuisance- under section 561.01.” Id. (ertiphásis added). A “residential tenant” within- the meaning of subdivision 11(2) therefore includes a “person *628 who is occupying a dwelling in [a building that is unoccupied due to a nuisance].” Id., subds. 11, 12 (emphasis added). The only way an individual can contemporaneously “occupy” an “unoccupied” building is if “occupy” in the- former sense denotes legal occupancy of the premises and in the latter sense denotes the absence of physical occupancy due to conditions constituting a nuisance. Thus, the most natural and reasonable meaning of “is occupying” in the context of a landlord-tenant relationship incorporates not- only physical occupancy, but also the present legal right of occupancy under a lease.[5]
For the foregoing reasons, we reverse the dismissal of the petition and remand to the housing court for further proceedings.
Reversed and remanded.

. The dissent concedes that an oral lease existed but concludes that the agreement did not specify the effective date of the lease, and therefore Cocchiarella did not have the present legal right of occupancy. In doing so, the dissent ignores the allegations of the complaint, which our case law requires that we assume to be true. “A claim is sufficient *625 against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader’s theory, to grant the relief demanded.” Walsh v. U.S. Bank, N.A., 851 N.W.2d 598, 603 (Minn.2014). Cocchiarella’s theory is that she had the legal right of occupancy when she petitioned the housing court for relief on February 12, 2014. This theory is possible based on the facts'stated in Gocchiar-ella’s petition that she paid‘rent for February 2014, was-told she could move in “a couple days” after February 1, and'was excluded from the apartment during that month.

. Amicus curiae Minnesota Multi Housing Association (MMHA) and the dissent argue that interpreting "occupying” to include the legal right of occupancy renders the subsequent phrase "under a lease or contract” redundant. We disagree. The phrase "under a lease or contract” specifies the basis by which a "residential tenant” holds the present occupancy rights to the residential rental property. For example, a tenant who is physically occupying the premises but not under .a lease or contract, such as an adverse possessor, is not a "residential tenant” under the statute. Likewise, a tenant who has a lease or contract with an effective date in the future does not have a present right, to legally or physically occupy the premises, and therefore is not a residential tenant under the statute. As discussed above, this specification is consonant with the creation of a tenancy at common law.

. "Possession” is defined as "[t]he right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object." Possession, Black’s Law Dictionary (10th ed.2014). The phrase "recover possession,” ' in Minn.Stat. § 504B.001, subd. 4, logically includes the legal right to recover possession.

. The dissent attempts to minimize- its physical possession theory by alleging physical possession of the keys is sufficient. The dissent's theory is unreasonable and unsupported by law. When a tenant has the legal right of occupancy, there is no reason why she must present physical evidence such as possession of the keys or placement of items within the premises to exercise her legal rights, nor do such items establish the existence of her legal rights. For example, if a landlord unlawfully "locks out” a resident by throwing her things away and changing the locks on the door, the tenant would no longer be able to show evidence of a key; dr items in her home, and would not qualify ás a "residential tenant” under the dissent’s interpretation of the statute. Further, if a landlord accepts money for rent but refuses the tenant the key well after the effective -date of the lease, the tenant would not qualify as a "residential tenant” under the dissent’s interpretation. Conversely, under the dissent’s theory, a tenant need only show a key that purportedly opens the door to the premises in question in order to qualify as a "residential tenant.”

. The dissent and'MMHA argue that policy ■ considerations — discouraging false or harassing claims — require us to interpret the phrase "residential tenant” as incorporating a physical occupancy requirement. We disagree. First, the dissent erroneously explores legislative intent, including..policy arguments, contrary to our canons of statutory interpretation. Because the statute is not ambiguous, the court is precluded from exploring the spirit or .purpose of the law. Minn.Stat. § 645.16; Premier Bank v. Becker Dev., LLC, 785. N.W.2d 753, 759 (Minn.2010). Second, the unlawful exclusion or removal statute already includes various protections against . abuses by those claiming to be "residential tenants.” Courts are not empowered to grant relief simply because a petitioner believes she has been wrongfully excluded. On the contrary, a petitioner must provide a “verified” petition or affidavit providing a “specific” statement of facts that “clearly” establishes the “unlawfulness” of the exclusion or removal from the premises, Minn.Stat. § 504B.375, subd. 1(b)(2), (c). If a petitioner fails to do so, the judicial officer can, and should, deny the immediate possession requested. In the event that immediate possession is wrongfully granted, a landlord has a clear, speedy, effective, and equivalent remedy. Specifically, if possession by the petitioner is wrongful, a landlord may obtain a dissolution of the order; obtain an equivalent writ of eviction; and recover costs, damages, and fees caused by the tenant’s wrongful possession. Id., subd. 2. This ability to recover costs, damages, and fees protects landlords by dissuading those with false, harassing, or even tenuous claims from" obtaining wrongful possession of residential properties.