**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0646**

In the Matter of the Application of
J. M. M. o/b/o Minors
for a Change of Name

**Filed February 13, 2017
Reversed and remanded
Smith, Tracy M., Judge**

Hennepin County District Court
File No. 27-CV-15-18151

Katherine S. Barrett Wiik, George D. Carroll, Mohammadee Summra Shariff, Robins Kaplan LLP, Minneapolis, Minnesota (for appellant J.M.M.)

Rana S. Alexander, Battered Women's Legal Advocacy Project, Minneapolis, Minnesota (for amicus curiae Battered Women's Legal Advocacy Project)

Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Smith, Tracy M., Judge.

## S Y L L A B U S

Minn. Stat. § 259.10, subd. 1 (2016), does not require an applicant-parent to provide notice of a name-change application filed on behalf of a minor child to a biological parent who does not have a legally recognized relationship with the child under the Minnesota Parentage Act, Minn. Stat. §§ 257.51-.74 (2016).

## O P I N I O N

**SMITH, TRACY M.**, Judge

Appellant J.M.M. applied to the district court to change the surnames of her three minor children. The Minnesota Change of Name Act, Minn. Stat. §§ 259.10-.13 (2016), provides that a minor child's name may not be changed without "both parents" having

notice of the application, "whenever practicable, as determined by the court." Minn. Stat. § 259.10, subd. 1. The district court dismissed J.M.M.'s name-change applications, without prejudice, because J.M.M. did not provide notice to the children's biological father.

On appeal, J.M.M. argues that the district court (1) erred in interpreting Minn. Stat. § 259.10, subd. 1, to require her to provide notice to the children's biological father and (2) abused its discretion in concluding that it was practicable to provide notice to the biological father. We conclude that the district court erred in determining that the statute required J.M.M. to provide notice to the children's biological father. We therefore do not reach the issue of whether such notice was practicable. We reverse and remand.

## FACTS[1]

Appellant J.M.M. is the mother of three minor children, ages six, four, and two at the time of the applications, who share a biological father.[2] The biological father is not listed on the children's birth certificates, but the children share his surname. J.M.M. and the biological father have never been married, and no court has ever adjudicated the paternity of the children. The biological father does not pay child support, has not seen any of the children since March 2013, and has not met the youngest child.

J.M.M. filed name-change applications on behalf of each of her minor children, requesting that each child's surname be changed from the biological father's surname to

---

[1] The facts are those alleged in J.M.M.'s name-change applications and affidavit in support of her applications.

[2] We refer to J.M.M. only by her initials in this opinion, because J.M.M. states that she fears that the biological father may attempt to harm her or her family. J.M.M. has not provided this court the name of the father, and his name is not established in the record. He is not a party to this appeal.

J.M.M.'s surname. Staff at the Hennepin County Self-Help Center provided J.M.M. with an application form and informed her that she was not required to provide notice to the biological father if paternity had not been previously established. Based on that information, J.M.M. wrote "no other legal parent" in the space asking her to provide the "name and last known address of the non-applicant parent." Beneath this question, four checkboxes ask the applicant to select all of the descriptions that apply to the non-applicant parent:

☐ The name on the birth certificate
☐ The person acting as the non-applicant parent
☐ The biological parent
☐ The non-applicant parent is not known and his/her/their name(s) is/are not shown on the birth certificates.

J.M.M. checked "[t]he non-applicant parent is not known and his/her/their name(s) is/are not shown on the birth certificate." J.M.M. did not check the box for "[t]he biological parent."

When the district court law clerk contacted J.M.M. to schedule a hearing, J.M.M. informed the clerk that "she knew the identity of the father but did not know his current whereabouts." The district court told J.M.M. that she must notify the biological father of the name-change applications at least 30 days before the hearing or the applications would be dismissed.

With the assistance of counsel, J.M.M. submitted to the district court an affidavit and a letter arguing that she should not be required to notify the biological father. In her affidavit, J.M.M. stated that she is the only parent listed on the children's birth certificates and that no father has been adjudicated their parent. J.M.M. stated that the biological father

3

had not seen any of the children for over two years, that he has never met the youngest child, and that he never cared for the two oldest children. She stated that none of her children know of him as any type of parental figure in their lives. J.M.M. stated that she and the biological father have never been married or attempted to marry, and that he has not cared for or supported the children. J.M.M. further stated that the biological father threatened her and her family with bodily harm, threatened to take her children away, and harassed her by making daily phone calls and visiting her workplace. She stated that the biological father threatened to kill J.M.M. and her family if "he were ever pursued for child support." J.M.M. also stated that, after the birth of her second child, the biological father "asked the nurses to give him the form on which [J.M.M.] had written the child's name" and demanded that J.M.M. change the child's surname to "the name [the child] has now."

The district court dismissed J.M.M.'s name-change applications without prejudice on February 23, 2016, because J.M.M. did not provide notice to the biological father. In a memorandum accompanying the order, the district court interpreted the statutory language concerning "both parents having notice," Minn. Stat. § 259.10, subd. 1, to mean that J.M.M. had to give notice to the children's biological father. The district court rejected J.M.M.'s argument that notice was not practicable, concluding that J.M.M.'s safety concerns did not override the father's right to notice because the district court could address J.M.M.'s concerns by ensuring deputies are present at the hearing, redacting any of J.M.M.'s contact information from the notice, and sealing the file.

J.M.M. appeals.

4

**ISSUE**

Did the district court err in interpreting Minn. Stat. § 259.10, subd. 1, to require J.M.M. to provide notice to the children's biological father solely because he is the biological father?

**ANALYSIS**

Minn. Stat. § 259.10, subd. 1, provides that "no minor child's name may be changed without both parents having notice of the pending of the application for change of name, whenever practicable, as determined by the court." J.M.M. argues that the statute requires notice to only the minor's legal parents. The district court interpreted Minn. Stat. § 259.10, subd. 1, to require notice to both biological parents, regardless of whether the biological parents are legal parents.

This court reviews questions of statutory interpretation de novo. *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009). The goal of statutory interpretation is to ascertain the intention of the legislature. *Marks v. Comm'r of Revenue*, 875 N.W.2d 321, 324 (Minn. 2016); *see also* Minn. Stat. § 645.16 (2016). We read and interpret the statute as a whole. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). When the plain language of the statute is unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *State v. Peck*, 773 N.W.2d 768, 772 (Minn. 2009); *see also* Minn. Stat. § 645.16. A statute is ambiguous if it is susceptible to more than one reasonable meaning. *Am. Family Ins. Grp*, 616 N.W.2d at 277. If we determine that the statute is ambiguous, we apply "other canons of construction to discern the legislature's intent." *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn. 2010).

5

We first examine whether Minn. Stat. § 259.10, subd. 1, is ambiguous. The district court reasoned that the statute is unambiguous when "parent" is read together with "both" because "both" indicates two and "every child has one biological father and one biological mother, but not every child has two individuals who have been established to be parents by a legal proceeding."

The term "parent" is not defined by the statute. We may use *Black's Law Dictionary* to assess the plain and ordinary meaning of a statutory term. *Goodman v. Best Buy, Inc.*, 777 N.W.2d 755, 759 n.2 (Minn. 2010). That dictionary presents numerous definitions of "parent":

> The lawful father or mother of someone • In ordinary usage, the term denotes more than responsibility for conception and birth. The term commonly includes (1) either the natural father or the natural mother of a child, (2) either the adoptive father or the adoptive mother of a child, (3) a child's putative blood parent who has expressly acknowledged paternity, and (4) an individual or agency whose status as guardian has been established by judicial decree. In law, parental status based on any criterion may be terminated by judicial decree. In other words, a person ceases to be a legal parent if that person's status as a parent has been terminated in a legal proceeding.

*Black's Law Dictionary* 1287 (10th ed. 2014); *see also Lehr v. Robertson*, 463 U.S. 248, 261, 103 S. Ct. 2985, 2993 (1983) (defining "parent" by the responsibilities of parenthood). These varied dictionary definitions alone do not resolve the question of whether "parent" refers to a child's biological father. *Cocchiarella v. Driggs*, 884 N.W.2d 621, 625 (Minn. 2016) (discussing conflicting dictionary definitions in statutory interpretation).

"When a word has a variety of meanings, we examine the context in which the word appears." *Cocchiarella*, 884 N.W.2d at 625. In context, "both" does not clarify the

6

meaning of the statute. We generally construe statutes to give meaning to each word. *Goodman*, 755 N.W.2d at 758. But "both" does not necessarily mean that two biological parents must have notice of the name-change application. Under Minnesota law, not every child has two biological parents. *See* Minn. Stat. § 257.56, subd. 2 (2016) (providing that a semen donor is not a biological father for purposes of the law). Moreover, interpreting "both parents" to mean biological parents would, in some circumstances, require notice to more than two parents (for example, when adoptive parents seek a name change). Because "both" does not clarify the meaning of "parents," the statute is ambiguous.

When confronted with an ambiguous statute, we use other interpretive tools to discern the meaning of the statute. *Brua*, 778 N.W.2d at 300; *see also* Minn. Stat. § 645.16. We may look to related statutes when interpreting an ambiguous statute. *Cty. of Dakota v. Cameron*, 839 N.W.2d 700, 707 (Minn. 2013). More specifically, we may borrow from other statutes' definitions of terms that are undefined in the statute at issue. *See id.* (finding support for the court's interpretation of "community" in other statutes' definitions of the term); *Dayton Hudson Corp. v. Johnson*, 528 N.W.2d 260, 262 (Minn. App. 1995) (adopting the definition of "person" in different statutes for the statute at issue).

A logical place to look to determine the meaning of "parent" is the Minnesota Parentage Act, Minn. Stat. §§ 257.51-.74. That act defines the "parent and child relationship" to mean "the *legal relationship* existing between a child and the child's biological or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations." Minn. Stat. § 257.52 (emphasis added). With respect to fathers, the parentage act provides that a parent-child relationship exists between a

7

biological father and a child if the biological father can satisfy any of the criteria in sections 257.57 to 257.75 of the act. Minn. Stat. § 257.54(b). A man is presumed to be the biological father if (1) he and the child's biological mother married or attempted to marry under certain circumstances and within certain timeframes relative to the child's birth, Minn. Stat. § 257.55, subd. 1(a)-(c); (2) he receives the child into his home and holds out the child as his biological child, *id.*, subd. 1(d); or (3) he and the child's biological mother execute an acknowledgement or recognition of paternity, *id.*, subd. 1(e)-(h). Paternity may be established by court action based on appropriate evidence (e.g., blood or genetic tests conducted pursuant to Minn. Stat. § 257.62 (2016)), Minn. Stat. § 257.57, and an adjudication of parentage by a court "is determinative for all purposes." Minn. Stat. § 257.66, subd. 1. Borrowing from the Minnesota Parentage Act, a biological father is a "parent" for purposes of the name-change act if he satisfies any of the provisions of Minn. Stat. § 257.54 defining the parent-child relationship.

This interpretation of "parent," which would exclude a biological father who has no legal relationship with a child, is in harmony with the Minnesota Adoption Act. Minnesota's adoption act defines "parent" to mean "the natural or adoptive parent of a child." Minn. Stat. § 259.21, subd. 3 (2016). However, a natural father is not entitled to notice of a hearing on a petition to adopt a child if the father has not been named on the child's birth record, has not substantially supported the child, was not married to the natural mother on the birth record, does not openly live with the child or the natural mother on the birth record, has not been adjudicated the child's parent, has not signed a declaration or recognition of parentage, has not filed a paternity action, and has not registered for the

8

adoption registry. Minn. Stat. § 259.49, subd. 1 (2016); *see also Heidbreder v. Carton*, 645 N.W.2d 355, 370 (Minn. 2002) (describing notice requirements under the Minnesota Adoption Act). If "parent" for purposes of the name-change act included a biological father who does not have a parent-child relationship as defined in the parentage act, that father would have greater notice rights under the name-change act than under the adoption act. It would be illogical to require notice of a proposed name change to a father who would not be entitled even to notice of a pending adoption.[3]

We have considered whether the absence of a notice requirement for a biological father who does not have a legal relationship with a child conflicts with a putative father's liberty interest in the preservation of the parent-child relationship. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212 (1972). Although the issue has not been raised or briefed, we perceive no constitutional infirmities. A putative father who fails to "accept some measure of responsibility for the child's future" does not have a protected interest in the preservation of the parent-child relationship. *Heidbreder*, 645 N.W.2d at 373 n.12, 382 (citing *Lehr*, 463 U.S. at 262, 103 S. Ct. at 2993-94). A father with no protected interest in preservation of the parent-child relationship is unlikely to have any due-process interest in a name-change application. *Lehr*, 463 U.S. at 262, 103 S. Ct. at 2993-94. Moreover, a biological father always has a right to invoke the parentage act to establish his rights, including notice of name-change applications, and his obligations as a parent.

---

[3] While it is possible, under our interpretation of "parent" under the name-change act, that in some circumstances a biological father who is not entitled to notice of a proposed name change would be entitled to a notice of a pending adoption, it makes sense that greater notice rights should attend the substantially more significant event of adoption, which necessarily results in the terminations of pre-existing parental rights.

We hold that, for purposes of the name-change act, notice is required to be given to a biological father only if he has a parent-child relationship under the Minnesota Parentage Act. *See* Minn Stat. § 257.54. We therefore conclude that the district court erred in determining that the biological father in this case must be given notice of the children's name-change applications based upon the sole fact that he is the biological father, and we reverse and remand. On remand, the district court shall consider and determine whether the biological father satisfies the criteria of the parentage act. In making such a determination, a district court should exercise its discretion to determine the credibility and sufficiency of factual support provided by an applicant to justify the notice provided or not provided in a given case and may make further inquiry as necessary to assure itself that the applicant is forthcoming with relevant information.[4]

## DECISION

Because we hold that Minn. Stat. § 259.10 does not require an applicant-parent to provide notice of a name-change application filed on behalf of a minor child to a biological father who does not have a legally recognized parent-child relationship with the child, we reverse and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**

---

[4] We note that the name-change statute makes it a misdemeanor for an applicant to make false statements in an application. Minn. Stat. § 259.10, subd. 1 ("Every person who, with intent to defraud, shall make a false statement in any such application shall be guilty of a misdemeanor . . . .").

10