**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-2046**

J&D Dental, et al.,
Respondents,

vs.

Liya Hou,
Appellant.

**Filed September 15, 2025**
**Affirmed**
**Frisch, Chief Judge**

Hennepin County District Court
File No. 27-CV-24-10516

Christopher W. Madel, Jennifer M. Robbins, Madel PA, Minneapolis, Minnesota (for respondents)

Bruce Jones, Josephine Pechous, Jessica L. Berns, Faegre Drinker Biddle & Reath LLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Frisch, Chief Judge; and Segal, Judge.*

**SYLLABUS**

Whether a civil action is based on speech "on a matter of public concern" and thus within the scope of the Uniform Public Expression Protection Act, Minn. Stat. §§ 554.07-.20 (2024), is determined, consistent with common-law interpretation of the phrase in the defamation context, on a case-by-case basis given the totality of

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

circumstances, taking into consideration the content, form, and context of the speech, as well as any other pertinent factors.

## OPINION

**FRISCH**, Chief Judge

In this interlocutory appeal, appellant challenges the denial of her special motion for expedited relief under the Minnesota Uniform Public Expression Protection Act (UPEPA), Minn. Stat. §§ 554.07-.20.  Appellant moved to dismiss defamation claims arising from appellant's online reviews of respondents' dental-care business.  Appellant asserts that her statements in the reviews are on a matter of public concern and therefore within the scope of UPEPA.  She asserts that she is entitled to dismissal of the defamation claims as a matter of law.  Because we conclude that appellant's speech is not on a matter of public concern, we conclude that the lawsuit based on her speech falls outside the scope of UPEPA and affirm.

## FACTS[1]

On July 12, 2024, respondents J&D Dental and Dr. Jennifer Herbert (collectively J&D Dental) initiated an action in district court against appellant Liya Hou.  In its complaint, J&D Dental asserted eight counts of defamation arising from Hou's "multiple false and defamatory Google reviews online regarding dental treatment received at J&D."  This appeal is taken from the district court's order denying Hou's special motion for

---

[1] The following facts, taken in the light most favorable to J&D Dental as the nonmoving party, are derived from the affidavits prepared and presented by the parties in support of and in opposition to Hou's special motion for expedited relief.

expedited relief under UPEPA, which authorizes interlocutory appellate review of the denial of such a motion. *See* Minn. Stat. § 554.15.

Hou was a patient at J&D Dental. In December 2023, Hou received two fillings in two of her teeth. About a month later, in January 2024, Hou returned to J&D Dental for a crown on a different tooth. In February 2024, Hou called J&D Dental and reported "discomfort related to the fillings." She informed J&D Dental that her new dentist stated that the work performed by J&D Dental "needed to be re-done." In March 2024, Hou emailed J&D Dental and requested compensation for the work that her new dentist said "needed to be redone."

Following additional correspondence between the parties, J&D Dental offered to refund Hou's insurance company for payments related to the fillings and crown, so long as she released all claims against J&D Dental. The next day, Hou responded that, in addition to these refunds, she sought compensation of $2,000 "for the negative outcomes and risks [she] bear[s]" resulting from her treatment at J&D Dental. Hou identified two options to resolve the dispute: (1) a refund of $1,278.94 to her insurance company and compensation of $2,000 paid to her; or (2) both amounts paid directly to her to "self-pay for the new crown on tooth 4 to expedite the treatment procedure without insurance coverage." Hou stated that if J&D Dental did not fulfill her request, she would "start to take actions, including but not limited to sharing [her] negative outcomes on social media," including via submission of Google reviews. Hou and J&D Dental did not resolve this dispute.

On June 25, Hou posted the following Google review:

> I want to give a negative rating! Anyone who cares about their dental health should avoid this practice! I was fooled by the 5-star rating and chose J&D Dental and [the dentist] has damaged three of my teeth! My treatment involved fillings on teeth 8 & 9 and a crown on tooth 4, which not only failed to solve the problems but led to more serious dental issues. Subsequent evaluations by multiple respected dentists have confirmed that the work performed was substandard, with fillings and the crown poorly executed and sealed, leaving open margins susceptible to bacterial infiltration and posing a significant risk of severe complications. I initially reported significant discomfort in my front teeth following fillings on teeth 8 & 9. Despite this, [the dentist], with a dismissive attitude, failed to address my concerns before proceeding with a crown on tooth 4. The treatments needed for teeth 8 and 9, which include enlarging the fillings, will compromise the structural integrity of these teeth, making them more susceptible to future issues. Additionally, replacing the current crown on tooth 4 carries risks such as root fracture and the necessity for an implant. I deeply regret choosing J&D Dental, as the physical and structural damage caused by [the dentist] to my teeth is permanent!

J&D Dental's counsel sent Hou a demand letter alleging that her Google review is defamatory. Hou thereafter posted seven additional and substantially similar Google reviews of J&D Dental, replacing the first sentence of her initial review with an assertion that J&D Dental "threaten[ed] to take legal action after [she] shared [her] true experience[.]"

J&D Dental filed a complaint in district court, asserting that Hou's reviews are defamatory because they are "untrue and unsupported" and that Hou has a "history of posting defamatory Google reviews." In her answer, Hou asserted that her statements in

4

the review are true and that her statements "related to a matter of substantial public interest and concern."

Hou filed a special motion to dismiss pursuant to UPEPA. Following a motion hearing, the district court denied Hou's special motion to dismiss. The district court concluded that Hou's speech fell outside the scope of UPEPA, and she therefore was not entitled to dismissal under that statute and that, if it were to conclude that Hou's speech fell within the scope of UPEPA, genuine issues of material fact precluded summary judgment in Hou's favor.

Hou appeals.

## ISSUE

Did the district court err in denying Hou's special motion to dismiss?

## ANALYSIS

This appeal arises from the district court's denial of Hou's "special motion for expedited relief to dismiss" pursuant to UPEPA. In 2024, the legislature adopted UPEPA, a uniform anti-SLAPP (strategic lawsuit against public participation) statute.[2] 2024 Minn.

---

[2] UPEPA and anti-SLAPP laws generally are procedural statutes "designed to prevent substantive consequences: the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit." Unif. Pub. Expression Prot. Act § 2 cmt. 2 (Unif. L. Comm'n 2020); *see also Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 228 (Minn. 2014) (noting that anti-SLAPP statutes protect the exercise of public-participation rights "threatened by SLAPP suits, which are generally filed in order to use litigation to intimidate opponents' exercise of rights of petitioning and speech, even when, as is often the case, the party filing the suit does not care whether it actually prevails" (quotation omitted)).

In adopting UPEPA, the legislature repealed Minnesota's previous anti-SLAPP statute, Minn. Stat. §§ 554.01-.06 (2022), which the supreme court ruled unconstitutional

Laws ch. 123, art. 18, § 16, at 2412-17. When it applies, a "defendant may obtain dismissal under UPEPA by demonstrating either that a plaintiff has failed to state a claim upon which relief can be granted or that there are no genuine issues of material fact and judgment is appropriate as a matter of law." *Cook v. Trimble*, 22 N.W.3d 196, 203-04 (Minn. App. 2025) (citing Minn. Stat. § 554.13(a)(3)(ii)), *rev. granted* (Minn. Aug. 12, 2025).

UPEPA directs courts assessing special motions for expedited relief to engage in a three-part analysis. *See* Minn. Stat. § 554.13(a); Unif. Pub. Expression Prot. Act § 7 cmts. 2-5 (Unif. L. Comm'n 2020). First, a district court must determine whether UPEPA applies to the action at issue. Minn. Stat. § 554.13(a)(1)-(2). Second, a district court must determine whether the nonmoving party has established a prima facie case for each essential element of the challenged causes of action. *Id.* (a)(3)(i). And third, a district court must determine whether the moving party has demonstrated a basis for dismissal either for failure to state a claim or because there are no genuine issues of material fact and judgment is appropriate as a matter of law. *Id.* (a)(3)(ii). We review a district court's decision on a special motion for expedited relief under UPEPA de novo. *Cook*, 22 N.W.3d at 204.

Against this backdrop, we turn to Hou's assertion that the district court erred in denying her motion for expedited relief by (1) determining that the action fell outside the scope of UPEPA and (2) alternatively concluding that she was not entitled to summary judgment.

---

as applied to tort claims in *Leiendecker v. Asian Women United of Minnesota*, 895 N.W.2d 623, 635-36 (Minn. 2017). 2024 Minn. Laws ch. 123, art. 18, § 16, at 2416.

6

**I.	The district court did not err in concluding that the civil action fell outside of the scope of UPEPA.**[3]

UPEPA applies to civil actions based on an "exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or the Minnesota Constitution on a matter of public concern." Minn. Stat. § 554.08(b)(3). Hou argues that the district court erred as a matter of law in concluding that J&D Dental's lawsuit did not fall within the protections of UPEPA because her speech—on which the lawsuit is based—is not "on a matter of public concern."[4] Minn. Stat. § 554.08(b)(3). This argument requires us to interpret UPEPA, and particularly to determine what the statute means when it refers to speech on a matter of public concern. "The interpretation of a statute is a question of law that we review de novo." *Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016). We interpret UPEPA in the first instance to determine whether Hou's speech is on a matter of public concern under UPEPA. *See Cook*, 22 N.W.3d at 203 n.6 (assuming without deciding that UPEPA applied to appellant's claims where applicability of the statute was undisputed).

---

[3] J&D Dental argues that Hou waived her statutory interpretation arguments. We disagree. The record reflects that Hou asserted that she was entitled to bring a special motion to dismiss the claims against her based on UPEPA's plain language and specified that her speech "discuss[es] a matter of public concern." And the record reflects that before the district court, J&D Dental raised and advanced arguments regarding the scope of UPEPA.

[4] Hou does not assert on appeal that her speech is otherwise protected under UPEPA. *See* Minn. Stat. § 554.08(b) (providing that UPEPA applies to communications in or related to governmental proceedings and to exercises of the right of freedom of the press, the right to assemble or petition, and the right of association).

We "interpret statutory language to ascertain and effectuate the Legislature's intent." *Getz v. Peace*, 934 N.W.2d 347, 353 (Minn. 2019) (quotation omitted). "If the meaning of a statute is unambiguous, the plain language of the statute controls." *Wilson v. Mortg. Res. Ctr., Inc.*, 888 N.W.2d 452, 458 (Minn. 2016). In construing a statute, we read "words and phrases . . . according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1) (2024). "[T]echnical words and phrases and such others as have acquired a special meaning . . . are construed according to such special meaning." *Id.* "A word has a special meaning if courts have ascribed a well-established and long-accepted meaning to it." *Cox v. Mid-Minn. Mut. Ins. Co.*, 909 N.W.2d 540, 543 (Minn. 2018) (quotation omitted).

Speech on a "matter of public concern" has taken on a special meaning. In *Snyder v. Phelps*, the United States Supreme Court stated:

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The arguably inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern.

562 U.S. 443, 453 (2011) (quotations and citations omitted). Consistent with this definition, the supreme court held in *Maethner v. Someplace Safe, Inc.*—a defamation action—that "whether speech involves a matter of public or private concern is based on a totality of the circumstances," taking into consideration "the content, form, and context of the speech. No single factor is 'dispositive;' rather, courts should 'evaluate all the

8

circumstances of the speech, including what was said, where it was said, and how it was said.'" 929 N.W.2d 868, 881 (Minn. 2019); *see also Johnson v. Freborg*, 995 N.W.2d 374, 384-85 (Minn. 2023) (applying the content-form-context test and concluding that a Facebook post about sexual abuse was speech on a matter of public concern), *cert. denied*, 144 S. Ct. 819 (Feb. 20, 2024).

The parties agree that the statute is unambiguous and that whether speech is on a matter of public concern under UPEPA is determined by applying the content-form-context test set forth in *Maethner*. We agree. Given the supreme court's holding in *Maethner* and UPEPA's instruction to "construe[] and appl[y]" the statute "broadly" to "protect the exercise of the right of freedom of speech and of the press," the term "matter of public concern" as stated in UPEPA has well-established "special meaning." *See* Minn. Stat. § 554.17; *Cox*, 909 N.W.2d at 543.

This interpretation is bolstered by the comments to the uniform act on which UPEPA is based. "Although not binding, the official comments to [a uniform law] may be persuasive." *In re Tr. of Moreland*, 993 N.W.2d 80, 88 n.6 (Minn. 2023) (addressing Uniform Trust Code); *see also Hennepin County v. Hill*, 777 N.W.2d 252, 256 (Minn. App. 2010) ("Our supreme court also has held that the intention of the drafters of a uniform act becomes the legislative intent upon enactment." (quotation omitted)); Minn. Stat. § 554.18 ("In applying and construing [UPEPA], consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."). The comments to the uniform act provide that "[t]he term 'matter of public concern' should be construed consistently with caselaw of the Supreme Court of the United States and the

state's highest court." Unif. Pub. Expression Prot. Act § 2 cmt. 9 (Unif. L. Comm'n 2020) (citing *Snyder*, 562 U.S. at 453). And the comments further indicate that "[t]he matter-of-public-concern inquiry turns on the 'content, form, and context' of the speech." *Id.* (quoting *Lane v. Franks*, 573 U.S. 228, 241 (2014)).

Consistent with the special meaning of "matter of public concern" and with the comments to the uniform act in mind, we hold that whether a civil action is based on speech "on a matter of public concern" and thus within the scope of the Uniform Public Expression Protection Act, Minn. Stat. §§ 554.07-.20 (2024), is determined, consistent with common law interpretation of the phrase in the defamation context, on a case-by-case basis given the totality of circumstances, taking into consideration the content, form, and context of the speech, as well as any other pertinent factors.[5]

We now apply this holding to determine whether Hou's speech is on a matter of public concern. With regard to the content-form-context test, we evaluate the totality of circumstances of the speech, including "what was said, where it was said, and how it was said." *Maethner*, 929 N.W.2d at 881 (quoting *Snyder*, 562 U.S. at 454). And in weighing the circumstances of the speech, we must make "an independent examination of the whole record." *Snyder*, 562 U.S. at 453 (quotations omitted). We review whether speech is on a matter of public concern de novo. *See Freborg*, 995 N.W.2d at 384.

---

[5] We note that Hou raises an additional statutory-construction argument in her brief. But at oral argument Hou's attorney agreed that the content-form-context test applies to determine whether Hou's speech is on a matter of public concern. We therefore decline to reach this secondary argument.

**A. The content of Hou's speech weighs against concluding that her reviews are speech on a matter of public concern.**

Turning first to the "content" of Hou's speech, we consider the entirety of Hou's reviews to determine whether the speech is on a matter of public concern. *Id.* at 385-86. The district court concluded that Hou's posts are "very specific to her alleged dispute" with J&D Dental, did not "address any broader issue" other than this dispute, and did not "impact a broader issue in the community at large." The district court then stated that "[t]o the extent Hou asserts the posts are 'warnings' to the broader public, the Court is not convinced that this interpretation of the communications is warranted from the content, where it was posted and the lack of any further discussion generated in relation to the communication."

Hou argues that the content of her speech is on a matter of public concern because "she joined and participated in an ongoing public discussion concerning J&D Dental's practice." Hou argues her "intent was clear: to spread awareness in the community," "to assist others in making health-related decisions," and to "promot[e] accountability and transparency in dentistry." J&D Dental argues that the content of Hou's speech is so dissimilar to that in *Freborg* that it cannot involve a matter of public concern.

In *Freborg*, the supreme court considered whether Facebook posts that "involved accusations of sexual assault by three dance instructors in the local Twin Cities dance community" was speech on a matter of public concern. *Id.* at 385. The posts identified, tagged, and admonished the instructors and listed "the varying degrees of sexual assault that [the speaker] says she experienced." *Id.* at 386. In considering the content of these

11

posts, the supreme court weighed the "personal portions" of the posts "against the remaining text." *Id.* Although it acknowledged that the posts contained information regarding a personal dispute, the supreme court highlighted those portions of the posts involving a matter of public concern. *Id.* For example, the introduction to the initial post suggested that the speaker was "encouraged by other women speaking out about sexual assault in the dance community to reveal her own experience and to add her voice to the community conversation." *Id.* The speaker also included the "well-known #MeToo hashtag and a #DancePredators hashtag, connecting her experience directly to the dance community and the broader #MeToo movement." *Id.* (noting that "the phrase 'me too' is inherently about connection" (quotation omitted)). And the speaker provided a subsequent explanation of her motives, including that she made the post "for the safety of other women." *Id.* The supreme court concluded that "even though [the speaker] named, tagged, and admonished three specific instructors in her post, these personal messages do not outweigh the dominant theme of her speech—to discuss sexual assault in the dance community, a matter of public import." *Id.* at 387.

The posts in *Freborg* bear some similarities to the posts at issue in this matter. Hou's reviews share a specific and personal experience with one dentist at J&D Dental. Like the speaker's introduction in *Freborg*, each of Hou's reviews includes a broader statement: "Anyone who cares about their dental health should avoid this practice! I was fooled by the 5-star rating and chose J&D Dental and [the dentist] has damaged three of my teeth!" These statements support Hou's argument that she intended for her speech to "spread

12

awareness in the community," "assist others in making health-related decisions," and "promot[e] accountability and transparency in dentistry."

But we do not examine these statements in isolation. The majority of Hou's speech recounts an individual grievance about her personal experience at J&D Dental, making this case more like those in which the Supreme Court has determined speech was not on a matter of public concern. *Compare Snyder*, 562 U.S. at 454 (concluding that the "content" of signs displayed by members of the Westboro Baptist Church at a soldier's funeral "may fall short of refined social or political commentary" but highlighted "matters of public import"), *with Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761-62 (1985) (noting that a party's credit report that was "made available to only five subscribers" involved no public issue because the speech was "solely in the individual interest of the speaker and its specific business audience"). And Hou's speech does not contain other hallmarks set forth in *Freborg* to support her assertion that the speech is on a matter of public concern. For example, Hou did not connect her experience directly to a community or broader movement and did not set forth a detailed explanation of her motives.[6] *See Freborg*, 995 N.W.2d at 386. Moreover, Hou's counsel candidly agreed at oral argument that the predominant theme of her speech was to "stay away from this dentist I had a bad experience here; the five-star reviews are misleading; . . . [and] you will be threatened if you leave a bad review." *Cf. id.* at 387 (concluding that the "dominant theme" of the speech

---

[6] We do not conclude that these hallmarks are required for speech to be on a matter of public concern but instead recognize that, on a case-by-case basis, such hallmarks may inform the totality of circumstances demonstrating whether speech is on a matter of public concern.

at issue was a matter of public import after weighing the personal aspects of the speech with "those elements addressing broader public issues").

Hou argues that authorities from other jurisdictions applying similarly worded anti-SLAPP statutes support her argument that her online reviews are on a matter of public concern. We disagree. Although courts in other jurisdictions have concluded that certain speech related to healthcare and healthcare providers involved matters of public concern, our close review of those cases reveals that the speech at issue was not limited to a personal grievance with a particular provider but instead reached matters of broader public import. *See, e.g.*, *Carver v. Bonds*, 37 Cal. Rptr. 3d 480, 493 (Cal. Ct. App. 2005) (concluding that article warning readers not to rely on doctors' ostensible experience in treating professional athletes and telling a "'a cautionary tale' of plaintiff exaggerating" such experience "served as a warning against plaintiff's method of self-promotion, and were provided along with other information to assist patients in choosing doctors," and therefore involved a matter of public concern); *Gilbert v. Sykes*, 53 Cal. Rptr. 3d 752, 758, 761-62 (Cal. Ct. App. 2007) (determining that cosmetic surgery patient's website contained speech on a matter of public concern under California's anti-SLAPP statute because website was not limited to patient's individual interactions with treating physician and contributed to public discourse about undergoing cosmetic surgery with advice, information, and a contact page where readers could share their own experience along with information and warning signs in the selection of cosmetic surgeons); *Aristocrat Plastic Surgery, P.C. v. Silva*, 169 N.Y.S.3d 272, 276-77 (N.Y. App. Div. 2022) (concluding that a plastic surgery patient's online reviews of plastic surgeon and his practice to provide information to potential patients in a forum with the

14

stated purpose of being a "key advisor" for people considering plastic surgery was speech on a matter of public interest under New York's amended anti-SLAPP law, which broadly construes "public interest" to include any subject other than a purely private matter); *Wong v. Jing*, 117 Cal. Rptr. 3d 747, 760 (Cal. Ct. App. 2010) (concluding that a "highly critical" review of a dentist involved a matter of public interest because it "went beyond parochial issues" and "implicitly dealt with" more general issues, including broader concerns about use of certain treatments on children). Unlike Hou's speech, the speech at issue in these matters reached broader societal issues of public interest.

We conclude that the "overall thrust and dominant theme" of Hou's speech was to discuss her personal grievance with J&D Dental and not to speak "to broader public issues" or discuss "a matter of public import." *Freborg*, 995 N.W.2d at 387 (quoting *Snyder*, 562 U.S. at 448). Thus, the content of Hou's speech does not favor concluding that her speech is on a matter of public concern.

## B. The form of Hou's speech weighs in favor of concluding that her speech is on a matter of public concern.

We next turn to the "form," or the "where," of Hou's speech. *Id.* at 389. The district court noted that Hou produced only "[m]inimal evidence . . . as to the nature or purpose of [online reviewing sites], outside the obvious that they are a space for individuals to provide opinions and ratings in relation to businesses and individuals providing services." The district court also noted that there was "no evidence the locations for the post are a forum for discussion of problems or widespread issues in relation to dentistry and there appears to be no connection from the posting to a wide public discussion of dentistry matters or

15

problems." Hou argues that the form of her speech—an online forum for reviewing businesses—supports a conclusion that her speech is on matter of public concern.

We agree with Hou that the form of her speech weighs in favor of concluding that her speech is on a matter of public concern. In *Freborg*, the supreme court concluded that, because the speaker "disseminated her speech on her Facebook account, making her post publicly available to anyone" and used an "internationally recognized hashtag," the "form" of her speech weighed in favor of concluding that the speech involved a matter of public concern. *Id.* In so doing, the supreme court noted that "the vast democratic forums of the Internet and social media in particular provide the most important places for the exchange of views." *Id.* (quotations omitted); *see also Packingham v. North Carolina*, 582 U.S. 98, 104-05 (2017) (noting that "[s]ocial media offers relatively unlimited, low-cost capacity for communication of all kinds," and that "users employ these websites to engage in a wide array of protected First Amendment activity on topics as diverse as human thought" (quotations omitted)).

We see no principled basis to conclude otherwise here. Hou used a digital public forum, not unlike the speaker in *Freborg*, where she posted her review for public consumption. As in *Freborg*, it appears that Hou "specifically chose this modern public square as a way for her message 'to reach as broad a public audience as possible.'" 995 N.W.2d at 389 (quoting *Snyder*, 562 U.S. at 454). And J&D Dental asserted in its complaint that the allegedly "defamatory review was posted publicly and was therefore published to people and entities online." Based on these considerations, we conclude that the form of

16

Hou's speech weighs in favor of a determination that her speech is on a matter of public concern.

**C.** **The context of Hou's speech weighs against a determination that her speech is on a matter of public concern.**

We next consider the context, or the "how," of Hou's reviews. *Id.* at 390. In assessing this factor, we examine the broader public context rather than the relationship between the two parties. *See Lane*, 573 U.S. at 241 (noting that the "form and context of the speech—sworn testimony in a judicial proceeding"—fortified the court's conclusion that such speech involved a matter of public concern); *Mayfield v. Mo. House of Reps.*, 122 F.4th 1046, 1054 (8th Cir. 2024) (considering the "context of the COVID-19 pandemic, at a time when many staff and elected representatives were planning to convene at the state capitol," in concluding that speech involved a matter of public concern). In examining the broader public context in *Freborg*, the supreme court considered (1) the resulting discussion following the speaker's online post, (2) the broader social movement related to the post, and (3) evidence of other conversations like the one in question taking place in the community. 995 N.W.2d at 390-92. The supreme court concluded that the preexisting relationship between the parties "is not a dispositive factor in assessing the nature of the speech, and it does not negate the importance of speaking out against sexual assault in society." *Id.* at 391.

We conclude that this factor favors a determination that Hou's speech is not on a matter of public concern for two reasons. First, her speech did not connect her experience to broader public issues like those set forth in *Freborg* or *Maethner*, or those described in

17

the authorities cited by Hou from foreign jurisdictions. And second, the record does not reflect any discourse, conversation, or connection between Hou's reviews and other business reviews. While there is some indication in the record of reactions to Hou's reviews, the record does not reflect the extent to which the reviews created or furthered any dialogue. In the absence of such evidence, and given that the dominant theme of the speech here is confined to the relationship between the two parties, we cannot conclude that this factor favors a determination that Hou's speech is on a matter of public concern.[7]

In sum, balancing the content, form, and context of Hou's speech under the totality of circumstances, we conclude that the dominant theme of Hou's speech is her personal experience and complaint arising from her treatment at J&D Dental. We therefore conclude that her speech is not on a matter of public concern and therefore, UPEPA does not apply to J&D Dental's civil action based on that speech.

## II. We do not reach Hou's argument that she was entitled to summary judgment.

Hou argues that the district court erred in denying her motion for summary judgment as an alternative basis for denying her special motion for expedited relief under UPEPA. Because we conclude that Hou's speech is not on a matter of public concern and that UPEPA does not apply to J&D Dental's civil action based on that speech, we do not reach

---

[7] Hou asserts we should consider that J&D Dental solicited her feedback on Google reviews and that she made her review in light of other reviews of J&D Dental expressing similar problems. And J&D Dental argues that the "context" of Hou's review—her requests for compensation from J&D Dental—supports the conclusion that her speech is not on a matter of public concern. We are not persuaded that under *Freborg*, either of these considerations is germane to our analysis of the "context" of Hou's review. And we are not persuaded that these are pertinent considerations in determining whether the speech at issue is on a matter of public concern.

this second assignment of error. To that end, we emphasize that we express no opinion on the merits of J&D Dental's defamation claims against Hou and that our opinion is limited to the procedural posture and record of the issue before us—Hou's special motion to dismiss under UPEPA.

## DECISION

We hold that whether a civil action is based on speech "on a matter of public concern" and thus within the scope of the Uniform Public Expression Protection Act, Minn. Stat. §§ 554.07-.20 (2024), is determined, consistent with common-law interpretation of the phrase in the defamation context, on a case-by-case basis given the totality of circumstances, taking into consideration the content, form, and context of the speech, as well as any other pertinent factors. In balancing the content, form, and context of Hou's speech under the totality of circumstances, we conclude that her speech is not on a matter of public concern and that UPEPA does not apply to J&D Dental's civil action based on that speech.

**Affirmed.**